614 So.2d 398 (1993)
Jerome BENBOW
v.
STATE of Mississippi.
No. 91-KP-0061.
Supreme Court of Mississippi.
February 18, 1993.
*399 Jerome Benbow, pro se.
Michael C. Moore, Atty. Gen., Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
McRAE, Justice, for the Court:
Jerome Benbow entered a plea of guilty to charges of aggravated assault on a law officer on May 4, 1989, in the Lafayette County Circuit Court and was sentenced to twenty (20) years in custody of the Mississippi Department of Corrections, with five (5) years suspended. Suspending Miss.Sup. Ct. Rule 4, pursuant to Miss.Sup.Ct.R. 2(c), we grant this appeal, which was filed thirty-four (34) days after Benbow's sentencing. Finding that the circuit court erred in refusing to allow Benbow to withdraw his guilty plea and order a trial on the grounds that Benbow had no counsel and had not knowingly and intelligently waived his right to counsel, we reverse and remand for proceedings consistent with this opinion.

I.
Jerome Benbow shot his wife, a campus traffic officer, while she was on duty at the University of Mississippi. Benbow claimed throughout the hearings that he "blacked out" and did not remember the shooting. He attributed this to a blow on the head that he had received earlier in the day when he was assaulted by two men. Benbow was indicted for aggravated assault on a police officer in violation of Miss. Code Ann.Sec. 97-3-7(2)(b) (Supp. 1991), which provides, in pertinent part:
A person is guilty of aggravated assault if he ...
(b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one year or in the penitentiary for not more that twenty years. Provided, however, a person convicted of aggravated assault upon a law enforcement officer or fireman while such law enforcement officer of fireman is acting within the scope of his duty and office shall be punished by a fine of not more than five thousand dollars ($5,000.00) or by imprisonment for not more than thirty years, or both.
Benbow's wife, a witness at the trial, however, was never asked about her duties as a University of Mississippi traffic officer. There was no attempt to attack the indictment as to whether a University traffic officer is a "law enforcement officer" within the meaning of the aggravated assault statute. The record indicates that the public defender knew that the victim was a University traffic officer, but just did not think to check out her duties to see if she was the type of "law enforcement officer" intended to fall within the statute.
Public Defender Omar Craig was appointed counsel. Legal intern David Minyard, following a court order which permitted him limited practice under Craig's supervision, appeared with Benbow when he entered the guilty plea on May 4, 1989. Benbow signed a petition to plead guilty and Minyard erroneously stated that the minimum sentence was thirty years. Minyard testified that he had thought that thirty years was the minimum sentence and communicated that to Benbow. Circuit Judge Kenneth Coleman did not advise Benbow prior to the plea as to the minimum penalty. Craig testified that he did not talk to Benbow prior to the plea and was not in the courtroom when he pled guilty and was sentenced.
*400 On August 8, 1989, Benbow collaterally attacked his plea and sentence, and following an evidentiary hearing, his motion for post-conviction relief/request to withdraw guilty plea was denied. The state has since filed a motion to dismiss the appeal as being untimely filed.

II.
We reject the State's argument that we do not have jurisdiction to consider Benbow's appeal because it was not filed until thirty-four days after sentencing. To deny the motion, we must suspend the 30-day filing rule provided for in Miss.Sup.Ct. Rule 4 as well Miss.Sup.Ct. Rule 2(a)(1), which mandates dismissal if notice is untimely. In this case, the notice was due December 31, 1990, and was not stamped "filed" by the clerk until January 4, 1991, four days late. Benbow argues that he delivered his notice of appeal to the prison authorities for mailing on December 29, 1990. He further asserts that he cannot be faulted because it did not arrive in the clerks office for filing until January 4, 1992.
In civil cases, we have refused to accept any excuse for not filing a notice in a timely fashion. See Tandy Electronics, Inc. v. Fletcher, 554 So.2d 308 (Miss. 1989). Whether, in criminal cases involving an incarcerated pro se litigant, the timely delivery to appropriate prison authorities is considered sufficient is a question of first impression in this State. Miss.Sup.Ct. Rule 4, in relevant part, provides that:
(a) Appeal and Cross Appeals in Civil and Criminal Cases. In a civil or criminal case in which an appeal or cross-appeal is permitted by law as of right from a trial court to this Court the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from. If a notice of appeal is mistakenly filed in this Court, the clerk of this Court shall note on it the date on which it was received and transmit it to the clerk of the trial court and it shall be deemed filed in the trial court on the date so noted.
(g) Extensions of time. The trial court may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time otherwise prescribed by this rule. Any such motion which is filed before expiration of the prescribed time may be granted for good cause and may be ex parte unless the court otherwise requires. Notice of any such motion which is filed after expiration of the prescribe time shall be given to other parties, and the motion shall be granted only upon a showing of excusable neglect. No such extension shall exceed 30 days past such prescribed time or 10 days for the date of entry of the order granting the motion, whichever occurs later.
Miss.Sup.Ct. Rule 2(a)(1) mandates dismissal if notice is untimely.
(a)(1) Mandatory Dismissal. An appeal shall be dismissed if the notice of appeal was not timely filed pursuant to Rules 4 or 5.
(c) Suspension of Rules. In the interest of expediting decision, or for other good cause shown, this Court may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction; provided, however, in civil cases this Court will not extend the time for taking an appeal as provided in Rules 4 or 5.
Rules 2(c) and 4(g), read in conjunction with Miss. Code Ann. 99-39-25(1) (Supp. 1991) provides this Court with authority to suspend the rule in post-conviction relief appeals, as in any other criminal appeal, and to allow an appeal to proceed despite apparently untimely notice.
The Comment to Miss. Supreme Ct. R. 4 notes that "a party must do all it could reasonably be expected to do to perfect the appeal in a timely fashion." We find that Benbow did all he could do under the circumstances. The Comment to Rule 4 also notes that upon the filing of an "excusable neglect" motion to extend the time for filing notice, courts may allow out of time appeal where, for example, "a timely *401 mailed notice was late because of unanticipated and uncontrollable delays in the mail." Fallen v. United States, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964). The U.S. Supreme Court followed Fallen in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), a case virtually indistinguishable from the case sub judice. In Houston v. Lack, the Supreme Court held that under a similarly worded Federal Rule of Appellate Procedure, a prisoner's pro se notice of appeal is deemed filed with timely delivery to proper prison authorities. The only difference between the Fed.R.App.P. 4 and the Miss.Sup.Ct.R. 4 is that Fed.R.App.P. 4(a)(1) applies to civil appeals, but habeas corpus appeals in federal court are civil matters. The threshold question is when the notice of appeal has been "filed" within the meaning of the rule; it matters not that Benbow is pursuing a criminal appeal and Houston was a civil appeal. The language setting the time limit for each is indistinguishable  Benbow had 30 days in which to have his notice "filed with the clerk of the trial court." Miss.Sup.Ct.R. 4(a). Houston had 30 days to have his notice "filed with the clerk of the district court." Fed.R.App.P. 4(a)(1). The Houston Court stated:
[P]etitioner thus filed his notice within the requisite 30-day period when, three days before the deadline, he delivered the notice to prison authorities for forwarding to the District Court. The situation of prisoners seeking to appeal without aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline... . Worse, the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the pro se prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped "filed" on time... . Unskilled in the law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access... .
... There is ... no dispute here that notice must be directed to the clerk of the district [or trial] court  delivery of a notice of appeal to prison authorities would not under any theory constitute a "filing" unless the notice were delivered for forwarding to the district court. The question is one of timing, not destination: whether the moment of "filing" occurred when the notice is delivered to the prison authorities or at some later juncture in its processing. The Rules are not dispositive on this point, for neither Rule sets forth criteria for determining the moment at which the "filing" has occurred.
... [T]he rationale for concluding that receipt constitutes filing in the ordinary civil case is that the appellant has no control over delays between the court clerk's receipt and formal filing of notice. This rationale suggests a far different conclusion here, since, as we discussed above, the lack of control of pro se prisoners over delays extends much further than that of a typical civil litigant... .
... [Noting the general rule is otherwise on civil cases] the general rule should apply here ...
We thus conclude ... the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.
Id., at 270-76, 108 S.Ct. at 2382-85. Fed. R.App.P. 4(a)(1).
The Houston decision further notes that reference to prison mail logs will generally provide a straightforward means of proving when a pro se litigant delivered his appeal for posting. In the case sub judice, we have only copies of Benbow's notice and designation of record dated December 29, as well as his testimony that he delivered it to them on that day to guide us. The record does not include copies of the prison mail logs, if indeed any, do exist.
Our perusal of the law of other jurisdictions shows that eight states have ruled on *402 the "prison mailbox rule". Seven have declined to adopt it.[1] The states which have declined to adopt Houston have done so primarily because of the lack of procedural guidelines in their state prison mailing system that are present in the federal system. They point out that in the federal system, there is a well developed procedure for determining the time and date on which mail is received. To the contrary, in most state systems, the mail is simply deposited in a common institutional mailbox with no record kept of who sent the information or at what time. Only Massachusetts has expressly followed Houston. The Supreme Judicial Court of Massachusetts held that "[o]nce the defendant comes forward with evidence as to the date and time he deposited the notice with prison authorities the burden is on [the state] to show that the defendant could not have deposited it within the established time." Commonwealth v. Hartsgrove, 407 Mass. 441, 444, 553 N.E.2d 1299, 1302 (1990). The Supreme Judicial Court of Massachusetts further found that it would be unfair to hold the defendant responsible for the vagaries of the prison mail system. Id. "The trial judge may note routine practice of prison authorities of picking up and delivering all mail within 24 hours, or it being deposited in the prison institutional mailbox and any records kept and the credibility of the defendant." Id., n. 6. While we leave the decision to adopt or reject the prison mailbox rule for another day, we find that circumstances dictate the suspension of Rule 4, thus enabling us to grant Benbow's appeal.

III.
Benbow next questions whether representation by a legal intern, acting under authority of Miss. Code Ann. Sec. 73-3-207 (1972), constitutes the actual assistance of counsel guaranteed by the Constitution. We hold that it does not. Mississippi Code Annotated Sec. 73-3-207 provides that:
A senior law student intern is hereby authorized to practice under the provisions of this article to the extent of having the authority to practice law in the courts of this state as if he were licensed to practice in this state, except that all pleading and other entries of record must be signed by an attorney licensed by the State of Mississippi and that in the conduct of a trial or hearing, an attorney licensed by the State of Mississippi must be present and supervising such intern's performance... .
Before reaching the question of whether counsel was deficient, and whether there was prejudice under Strickland v. Washington, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), it is necessary to determine whether Benbow actually was represented by counsel at the time he entered his plea. See United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The legal intern was not a licensed attorney at the time, though he was given limited authority via Sec. 73-3-207 to practice as if he were licensed, subject to adequate supervision by a licensed attorney.
By most accounts, Public Defender Omar Craig allowed his law student intern to handle this case, though he claims to have consulted privately with him on a regular basis. Apparently, Craig never met with Benbow, was not in court with him for the plea and did not discuss the plea process with him, despite the requirement of Sec. 73-3-207 that a licensed attorney appear in court to supervise a legal intern in the conduct of any trial or hearing. It further appears that neither Craig nor the intern had even questioned whether the indictment was defective nor queried Benbow's wife in order to ascertain the nature of her job or whether she had taken the oath of a law enforcement officer to determine if she in fact fell within the purview of the statute under which Benbow was indicted.
When asked about the extent of his knowledge as to any representation provided by Craig the defendant stated:

*403 BENBOW:
Q: So that would be the arraignment. Now when did you first see Mr. Craig?
A: I've never seen Mr. Craig. I don't even know what the man looks like.
Q: You don't know Mr. Omar Craig?
A: No, sir, I do not.
Q: You ever talked with him?
A: I never talked with Mr. Craig.
Q: So your communications were completely with Mr. David Minyard; is that correct?
A: Yes, sir.
Q: Now Mr. Benbow, I'm going to remind you that you are under oath. Did you ever see Mr. Craig?
A: No, sir. I promise to God I don't know the man. I've never seen him.
In response, Craig explained the extent of his contact (or lack thereof) with the defendant throughout the representation:
OMAR CRAIG:
Q: Yes, sir, it's been some time. In that motion for mental examination it is stated that  and I read in paragraph two "Defendant does not recall facts of the alleged crime with which he is charged. The defendant, therefore, would be of little assistance in assisting defense counsel in recommending a defense."
Was this your observation of the defendant at the time?
A: I can't say that would be my observation. I would have to say that was reported to me at least on five or six occasions that he had no recollections of it.
Q: Mr. Minyard?
A: Yes. I don't recall, other than just seeing the defendant, sticking my head in the room while conferences were going on, ever having any direct conversations with the defendant.
Q: So you didn't have any direct conversations with the defendant?
A: Not to my best recollection, sir.
A: I was not present when the actual plea was entered on either occasion. I was in the ante room, but I do not believe that occurred in this case.
Some jurisdictions have found that representation by an intern does, in fact constitute adequate representation, but the statutes governing this issue and the procedures involved when a law student represent a defendant differ greatly from our own. See Aldridge v. State, 425 So.2d 1132 (Fla. 1983) (on claim that intern was not properly supervised, public defender was in charge of appellant's case and intern merely assisting); Darnell v. State, 623 P.2d 617 (Okla.Cr. 1981) (special rule provided for waiver of supervising attorney; representation by intern at preliminary hearing with consent); City of Seattle v. Ratliff, 100 Wash.2d 212, 667 P.2d 630 (1983) (statute allowed intern to represent client alone without supervision if intern had participated with supervisor in at least one nonjury case). See also Zupanec, Annotation, Propriety and Effect of Law Students Acting As Counsel in Court Suit, 3 A.L.R.4th 358 (1981); Sarno, Annotation, Modern Status of Rules and Standard in State Courts As to Adequacy of Defense Counsel's Representation of Criminal Client, 2 A.L.R.4th 27 (1980); Moldoff, Annotation, Representation of Accused by Person Not Licensed to Practice Law as Compliance with Constitutional Right To Counsel 68 A.L.R.2d 1141 (1959). The common thread in these cases is that for the intern's representation to be considered adequate, the attorney and the intern must have complied with all of the statutory prerequisites. Because we have no guidance from other jurisdictions on this issue, we must evaluate the requirements set forth in our own statute to determine if Benbow's appointed counsel complied with them in a meaningful fashion.
The statute specifically states that in all court proceedings, a licensed attorney must be present to supervise the intern. The evidence before us makes clear that Omar Craig was not present at Benbow's hearing nor during any of the intern's meetings with his client. We find that Craig's supervision of his intern falls short of the statutory command that the sponsoring attorney be present with his intern in the courtroom. Indeed, this case provides a textbook example *404 of the Legislature's reason for so dictating.
Accordingly, finding that Benbow was not represented by counsel, at the time he entered his guilty plea we therefore do not reach the question of whether any such representation was adequate since there was none.[2] Because the record indicates that Benbow neither knowingly nor intelligently waived his right to counsel, we find that the circuit court erred in failing to allow him to withdraw his guilty plea and order a new trial.

IV.
Benbow next asserts that the indictment is defective because it alleges aggravated assault on a law officer when, in fact, the victim was not a law officer within the meaning of Sec. 97-3-7(2). This point is significant because aggravated assault on a law enforcement officer carries an enhanced penalty. However, while there may well be problems with the indictment, we find that this question is properly a matter for the circuit court to determine.

V.
Finding that Benbow's "representation" by a largely unsupervised law student intern does not constitute representation by counsel, we reverse and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
ROBERTS, J., not participating.
NOTES
[1] See eg. Key v. State, 297 Ark. 111, 759 S.W.2d 567 (1988); Carr v. State, 554 A.2d 778 (Del. 1989); Hicks v. State, 565 So.2d 362 (Fla. 1990); State v. Lee, 117 Idaho 203, 786 P.2d 594 (1990); Vollmer v. State, 775 S.W.2d 230 (Mo. App. 1989); State v. Alexander, 52 Ohio St.3d 84, 555 N.E.2d 966 (1990); Turner v. Commonwealth, 137 Pa. Commw. 609, 587 A.2d 48 (1991).
[2] Benbow also asserted that his plea was rendered involuntary because he was not properly advised of the minimum sentence the offense carried. Vittitoe v. State, 556 So.2d 1062 (Miss. 1990). Finding that he was not represented by counsel, we do not reach this issue.