## S01A1182. MASSALINE v. WILLIAMS.
(554 SE2d 720)

FLETCHER, Chief Justice.

Robert Massaline is incarcerated in Georgia's prison system and is without legal representation. Massaline filed pro se an application for certificate of probable cause to appeal ("application"), requesting this Court to review the superior court's denial of his petition for writ of habeas corpus. We dismissed his application because it was received in the Clerk of Court's office one day after the due date. We granted Massaline's motion for reconsideration and his application to consider whether we should adopt a mailbox rule under which a pro se prisoner's application should be deemed filed on the date he delivers it to the prison authorities for forwarding to the clerk of court. We answer this question affirmatively and adopt a mailbox rule for pro se prisoners pursuing review of their habeas corpus cases.

Massaline filed pro se a petition for writ of habeas corpus, which the superior court denied on April 24, 2000. The deadline for Massaline to appeal was May 24, 2000. He mailed his application to this Court and his notice of appeal to the Clerk of the Gwinnett County Superior Court. Both documents were dated May 22, 2000. The notice of appeal was filed timely in the superior court on May 24. Massaline's application, however, was filed in this Court on May 25, one day late. Unless Massaline's application is covered by a mailbox rule, his appeal will be dismissed as untimely.[1]

1. The United States Supreme Court adopted a mailbox rule for pro se prisoners in *Houston v. Lack*,[2] holding that a notice of appeal was deemed filed on the date the pro se prisoner handed it to prison authorities for mailing to the clerk of the district court. The Court reasoned that a mailbox rule was needed because of the unique obstacles faced by those who are both imprisoned and unrepresented.[3] Unlike litigants who are not incarcerated, pro se prisoners

---

[1] See *Fullwood v. Sivley*, 271 Ga. 248 (517 SE2d 511) (1999).
[2] See *Houston v. Lack*, 487 U. S. 266 (108 SC 2379, 101 LE2d 245) (1988).
[3] *Houston*, 487 U. S. at 270-272.

cannot monitor the processing of their appellate filings to ensure that the clerk of the court timely receives them. They cannot personally travel to the courthouse to see that their filings are stamped "filed" timely, and they cannot regularly call the clerk of court to monitor whether their filing has been received, knowing that a last minute trip to the courthouse will save them if their papers have not arrived by the due date. And, of course, being pro se, they cannot rely on their lawyer to ensure the safe and timely filing of their appeals. Pro se prisoners also must entrust their legal papers to the prison officials, even though the warden is typically the named defendant in a habeas corpus action. "No matter how far in advance the pro se prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped 'filed' on time."[4]

> Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities – and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.[5]

Other state courts have adopted mailbox rules because pro se prisoners in those states face the same kinds of obstacles as described by the United States Supreme Court in *Houston*.[6] The pro se prisoners who come before this Court are no different. Georgia's prisoners already enjoy the benefits of a mailbox rule when filing in the federal courts,[7] and we conclude that this Court also should make allowances for the unique circumstances faced by pro se prisoners who bring their habeas corpus petitions to this Court.[8]

---

[4] Id. at 271.

[5] Id. at 271-272.

[6] See, e.g., *Washington v. Hurt*, 27 P.3d 1276, 1278 (Wash. 2001); *Sykes v. Mississippi*, 757 So.2d 997, 1000-1001 (Miss. 2000); *State ex rel. Egana v. Louisiana*, 771 So.2d 638, 2000 La. LEXIS 3022, *1-2 (La. Sept. 22, 2000); *Wisconsin ex rel. Shimkus v. Sondalle*, 620 N.W.2d 409, 412-414 (Wis. App. 2000); *Taylor v. McKune*, 962 P.2d 566, 569-570 (Kan. App. 1998); *Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997); *Munson v. Idaho*, 917 P.2d 796, 799-800 (Idaho 1996); *Mayer v. Arizona*, 908 P.2d 56, 57 (Ariz. Ct. App. 1995); *Ex parte Williams*, 651 So.2d 569, 571 (Ala. 1992); *In re Jordan*, 840 P.2d 983, 985 (Cal. 1992); *Woody v. Oklahoma ex rel. Dept. of Corrections*, 833 P.2d 257, 259-260 (Okla. 1992); *Haag v. Florida*, 591 So.2d 614, 617 (Fla. 1992); *Kellogg v. Journal Communications*, 835 P.2d 12, 13-14 (Nev. 1992); *Commonwealth v. Hartsgrove*, 553 N.E.2d 1299, 1301-1302 (Mass. 1990).

[7] See *Leal v. Georgia Dept. of Corr.*, 254 F.3d 1276, 1277-1278 (11th Cir. 2001); *Garvey v. Vaughn*, 993 F.2d 776, 777 (11th Cir. 1993).

[8] Other states also have followed *Houston's* lead and adopted mailbox rules. See, e.g., *Wisconsin ex rel. Shimkus v. Sondalle*, supra; *Taylor v. McKune*, supra; *Tatum v. Lynn*, 637 So.2d 796, 799 (La. App. 1994); *Woody v. Oklahoma ex rel. Dept. of Corrections*, supra; *Haag*

2. The State argues that this Court lacks the power to deem an event other than delivery into the hands of the clerk of the court as "filing" because OCGA § 9-14-52 (b) says that applications and notices of appeal must be filed "with the clerk." This argument is unpersuasive for at least two reasons.

First, Georgia's general appellate statutes require filing "with the clerk."[9] Yet, Supreme Court Rule 13 permits litigants to satisfy their obligation to file with the clerk by sending their papers by registered or certified mail, and we recently expanded Rule 13 to include overnight delivery services within its scope. Our adoption of Rule 13 demonstrates that the appellate statutes do not restrict us in determining the manner in which filing with the clerk may be accomplished, including permitting filing by means other than personal delivery.

Similarly, adopting a mailbox rule for pro se prisoners in habeas corpus appeals is consistent with the statutory language in OCGA § 9-14-52 (b), which contains the same "with the clerk" language that is in the other appeals statutes.[10] Just as we have adopted Rule 13 to permit non-incarcerated litigants to satisfy the statutory requirement that they file "with the clerk" by means other than personally delivering their papers to the courthouse, we also can permit pro se prisoners to satisfy their filing requirements in ways other than personally handing their applications and notices of appeal to the clerk of court.

Second, the "with the clerk" language from OCGA § 9-14-52 (b) and OCGA §§ 5-6-34, 5-6-35, 5-6-37 is the same as the language in the federal rules that the United States Supreme Court considered in *Houston*.[11] Faced with the same "with the clerk" language as contained in Georgia's appeals statutes, the United States Supreme Court adopted a mailbox rule for pro se prisoners filing their notices of appeal in the federal trial courts. Given the considerable challenges presented to a pro se prisoner's ability to pursue his constitutional right to habeas corpus, we reach the same conclusion as the United States Supreme Court reached in *Houston*: adopting a mailbox rule for pro se prisoners promotes judicial fairness and helps assure that habeas corpus cases are decided on the merits and not the overly technical application of procedural rules.

The State also argues that it has no way in which to monitor

---

*v. Florida*, supra.

[9] OCGA §§ 5-6-34, 5-6-35, 5-6-37.

[10] Compare OCGA §§ 5-6-34, 5-6-35, 5-6-37 with OCGA § 9-14-52 (b).

[11] See *Houston*, 487 U. S. at 272. Federal Rule of Appellate Procedure 4 was amended after *Houston* to provide a mailbox rule for inmates. See Fed. R. App. P. 4 (c). The Supreme Court also has made a mailbox rule a part of its rules. See United States Supreme Court Rule 29.

when an inmate delivers court papers to prison officials for filing. Of course, the State has been faced with the mailbox rule in the federal courts since at least 1993 and has managed prison legal mail in the federal litigation it faces.[12] The State also, if it chooses, can develop a system for logging prisoners' outgoing legal mail, or otherwise ensuring an accurate record of the dates prisoners deliver their legal papers to prison officials, just as the State says that it already does for mail delivered to inmates.

3. (a) Having considered the arguments presented, we adopt today the following mailbox rule: when a prisoner, who is proceeding pro se, appeals from a decision on his habeas corpus petition, his application for certificate of probable cause to appeal and notice of appeal will be deemed filed on the date he delivers them to the prison authorities for forwarding to the clerks of this Court and the superior court, respectively. Just as the timeliness of Massaline's appeal will be analyzed under this Court's mailbox rule, all pro se prisoners similarly situated to Massaline (i.e., those whose habeas corpus appeals have been filed and may be untimely based on the date the clerk stamped their papers "filed") also will have the timeliness of their appeals considered under the mailbox rule.[13]

(b) We recognize that the mechanics for administering this Court's adoption of a mailbox rule may require some refinements after it is put in practice. Whether the unrepresented inmate-litigant delivered his court papers to the prison officials on or before the court deadline will be the question. Absent an established system for logging the date an inmate's outgoing legal mail is delivered to prison officials, a pro se prisoner may prove the timeliness of his filing in, at least, the following ways:

(a) an official United States Postal Service post-mark showing a date before the deadline will be conclusive;
(b) the date on the certificate of service will give rise to a rebuttable presumption that the prisoner handed his filing to the prison officials on that date; or
(c) an affidavit reflecting the date and the fact the prisoner provided his legal filing with sufficient prepaid postage for first-class mail will give rise to a rebuttable presumption.

The State may rebut the presumption that arises when a litigant relies on methods (b) or (c) by proving that, contrary to the representation in the certificate of service or affidavit, the prisoner delivered his application or notice of appeal to the prison officials after the

---

[12] See *Garvey v. Vaughn*, supra.
[13] See *Taylor v. State*, 262 Ga. 584, 586 (422 SE2d 430) (1992).

deadline for filing.

4. Massaline's notice of appeal was stamped "filed" timely by the clerk of the superior court. Applying our mailbox rule to Massaline's application, which was stamped "filed" by this Court after the deadline, we find that the post-mark on the envelope that contained his application is May 23, 2000, which results in Massaline's application being deemed timely filed. Because Massaline's application is timely under the mailbox rule, we turn to the merits of Massaline's petition for writ of habeas corpus. Having reviewed the record, we conclude that Massaline received a full and fair hearing before the superior court, and that court correctly denied Massaline's petition for writ of habeas corpus.

*Judgment affirmed. All the Justices concur, except Carley, Thompson and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

Today, the majority rewrites the plain language of OCGA § 9-14-52 (b) and thereby expands this Court's jurisdiction beyond the parameters established by the General Assembly. Controlling authority establishes that this Court does not have jurisdiction to consider the merits of Massaline's appeal. Therefore, the case should be dismissed.

The majority perceives its holding as necessary to ameliorate "the considerable challenges presented to a pro se prisoner's ability to pursue his constitutional right to habeas corpus. . . ." Certainly, Massaline was entitled to seek a writ of habeas corpus. Art. I, Sec. IX of the Constitution of the United States; Art. I, Sec. I, Par. XV of the Georgia Constitution of 1983. However, this case really does not involve that constitutional right, as Massaline *did* pursue habeas and was unsuccessful. The dispositive issue here is simply whether this Court has jurisdiction over an *appeal* from the denial of habeas relief. "[T]here is no federal or state constitutional right to bring an appeal. 'Instead, the right of appeal depends upon statute.' [Cit.]" *Fullwood v. Sivley*, 271 Ga. 248, 250 (517 SE2d 511) (1999). Thus, the majority erroneously purports to defend a constitutional right, when this case actually involves only a question of statutory interpretation regarding appellate jurisdiction.

As to the relevant jurisdictional issue, OCGA § 9-14-52 (b) unambiguously provides that, within 30 days of the entry of an order denying habeas relief, a petitioner who desires to appeal "must file" a written application for a certificate of probable cause to appeal "with the clerk of [this] Court" and "shall also file within the same period a notice of appeal with the clerk of the concerned superior court." As written, the statute contains no exceptions or provisos. "In habeas corpus cases, the General Assembly has determined that the unsuc-

cessful petitioner must timely file *both* a notice of appeal *and* an application for a certificate of probable cause in order to invoke this Court's jurisdiction." (Emphasis in original.) *Fullwood v. Sivley*, supra at 250. It is undisputed that Massaline did not comply with the statutory requirements, since he did not timely file an application for a certificate of probable cause with this Court's clerk.

The majority, however, is moved by its concern that prisoners seeking state court relief do not "enjoy the benefits" of the "mailbox rule" which is in effect in federal courts. To rectify the perceived injustice resulting from the General Assembly's failure to provide Georgia inmates with the most favorable treatment possible, the majority judicially amends OCGA § 9-14-52 (b) so that a pro se prisoner is now completely exempt from complying with the statutory requirement of making timely filings with the clerks of the respective courts. As of today, the pro se inmate need only certify that he has delivered the application and notice of appeal to the prison authorities within the 30-day period.

As support for this holding, the majority cites *Houston v. Lack*, 487 U. S. 266 (108 SC 2379, 101 LE2d 245) (1988). However, even a cursory reading of that case demonstrates that it does not apply to the construction of a state statute, such as OCGA § 9-14-52 (b). The limited issue addressed in *Houston*, supra at 268, was "whether *under Federal Rule of Appellate Procedure 4 (a) (1)* . . . notices [of appeal by pro se prisoners] are to be considered filed at the moment of delivery to prison authorities for forwarding" to the appellate court clerk. (Emphasis supplied.) Thus, as a significant number of courts in other jurisdictions have correctly recognized, *Houston* is neither controlling nor even persuasive authority for interpreting a *statutory* grant of jurisdiction to a *state* appellate court. *Grant v. Senkowski*, 744 NE2d 132 (N.Y. 2001); *Hamel v. State*, 1 SW3d 434 (Ark. 1999); *State v. Parmar*, 586 NW2d 279 (Neb. 1998), overruled on other grounds, *State v. Edmonson*, 598 NW2d 450 (Neb. 1999); *Behrens v. Patterson*, 952 P2d 990 (Okla. Crim. App. 1997); *Walker-Bey v. Dept. of Corrections*, 564 NW2d 171 (Mich. App. 1997); *Tyler v. Alexander*, 555 NE2d 966 (Ohio 1990). "[T]he *Houston* case was no more than the Supreme Court's interpretation of federal rules which have no applicability in our jurisdiction. [Cit.]" *Hamel v. State*, supra at 436.

Therefore, the majority not only misidentifies this case as one involving a constitutional right, it also miscites as its authority a decision which is completely irrelevant to the construction of OCGA § 9-14-52 (b). This Court's Rule 13, rather than OCGA § 9-14-52 (b), is the obvious analogue to the federal rule construed in *Houston*. Our rule provides, in relevant part, that,"[e]xcept as provided hereafter, the contents of properly addressed mail shall be deemed filed as of the date such mail is *received in the Clerk's office*." (Emphasis sup-

plied.) The purpose of Rule 13 is to establish precisely when and how the statutory requirement of filing "with the clerk" is met, and it makes no provision for a "mailbox rule" to benefit incarcerated pro se habeas petitioners. Amendment of the rule so as to provide for such a "mailbox rule" may or may not be permissible. See OCGA § 15-2-17, which provides that our rules must not "conflict with the Constitution or laws of this state. . . ." However, amendment of this Court's rules is a vastly different matter than judicial amendment of a statute so as to authorize filing with prison officials rather than "with the clerk" of the applicable court. This Court possesses the authority to amend its rules, but the General Assembly has exclusive constitutional authority to amend the laws of Georgia.

Notwithstanding the majority's stated intention to limit the scope of today's opinion, its implications clearly extend beyond OCGA § 9-14-52 (b) and habeas appeals. Statutes are interpreted in accordance with well-recognized rules of construction, one of which provides that, "[o]rdinarily, the same words used in different statutes on the same subject are interpreted to have the same meaning." 73 AmJur2d, Statutes, § 233, p. 416. As the majority concedes, the filing "with the clerk" language appears in numerous provisions of the Appellate Practice Act (APA). OCGA §§ 5-6-34 (b), 5-6-35 (d), 5-6-37. Thus, by basing its holding on a *statutory interpretation* of OCGA § 9-14-52 (b), the majority implicitly amends those other provisions so as to incorporate the "mailbox rule." Habeas corpus is the "great writ," but an appeal from the denial of a habeas petition is not entitled to any more deference than a pro se prisoner's direct appeal from a criminal conviction or from an adverse civil judgment. "[T]he unsuccessful habeas petitioner should have no greater constitutional right to have his appeal decided on the merits than the appellant in any other case which is appealable to this Court." *Fullwood v. Sivley*, supra at 253. Indeed, the "mailbox rule" recognized in federal courts is not limited to habeas appeals. See *Fallen v. United States*, 378 U. S. 139 (84 SC 1689, 12 LE2d 760) (1964) (notice of direct appeal from criminal conviction). Therefore, the implicit result of today's ruling is that whenever a pro se prisoner wishes to initiate a direct appeal from a criminal conviction or to apply for an interlocutory or discretionary appeal in any criminal or civil litigation in which he is a party, he does not have to comply with the requirement of timely filing "with the clerk" of this Court or of the Court of Appeals. He need only deliver a notice of direct appeal or an application for interlocutory or discretionary appeal to the officials of the facility where he is incarcerated. This wholesale amendment of OCGA § 9-14-52 (b) *and* the APA is an unconstitutional encroachment on the legislative authority of the General Assembly. "[T]he right of appeal is not absolute, but is one based upon the conditions imposed by the General

Assembly for bringing cases to the appellate courts." *Fife v. Johnston*, 225 Ga. 447 (169 SE2d 167) (1969).

Even accepting the anomalous notion that this Court is authorized to amend an enactment of the General Assembly, policy considerations nevertheless militate against adoption of the "mailbox rule." The majority acknowledges that implementation will require some "refinements." To that end, it gratuitously creates a rebuttable presumption upon which pro se prisoners may rely. Thus, whenever satisfaction of jurisdictional requirements is in question, pro se prisoners can now invoke a favorable evidentiary presumption which is unavailable to licensed attorneys at law. Counsel must demonstrate full compliance with all jurisdictional mandates, but a prisoner is entitled to a presumption of compliance unless and until the prison officials can prove otherwise. I submit that it is extremely bad policy to extend to a convicted criminal the benefit of a doubt which is denied to a sworn officer of the court.

In addition, the majority does not specify the forum in which the prisoner's presumption can be rebutted. However, neither this Court nor the Court of Appeals can conduct hearings to resolve factual disputes between prisoners and prison officials. "As appellate courts, we are courts for the correction of errors of law made by the trial courts. [Cit.]" *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999). Thus, the majority presumably intends for the trial courts to make such decisions. If so, then all adverse determinations apparently will be appealable in accordance with OCGA § 9-14-52 or the APA, with the result that this Court and the Court of Appeals will now be forced to entertain an entirely new type of appeal involving the issue of whether a pro se prisoner complied with the "mailbox rule." The unavoidable consequence of the innumerable jurisdictional appeals spawned by today's opinion will be a prolonged delay in resolution of the merits of appeals brought by pro se prisoners. That delay can be obviated simply by requiring that unrepresented inmates comply with the same jurisdictional requirements as any other litigant. Although Massaline did not have the same direct access to the courts as an unincarcerated litigant, one of the consequences of breaking the criminal law is imprisonment.

[Appellate Judges] recognize the greater impediments pro se prisoners may face over most other litigants in filing their legal papers on time. But, absent any evidence that the Legislature intended to vary for their benefit the ["filing with the clerk"] requirement established in [OCGA § 9-14-52 (b)], we cannot depart from the statutorily mandated filing requirements by incorporating a pro se prisoner mailbox exception.

*Grant v. Senkowski*, supra at 134. " 'To say that jurisdiction may be lodged in the supreme court in any other manner than that provided by the plain words of the statute amounts to judicial legislation.' [Cit.]" *State v. Parmar*, supra at 283. Because this Court can enforce OCGA § 9-14-52 (b), but cannot amend it, I dissent to the unconstitutional judicial legislation "enacted" this day by the majority.

I am authorized to state that Justice Thompson and Justice Hines join in this dissent.

DECIDED OCTOBER 22, 2001 —
RECONSIDERATION DENIED DECEMBER 3, 2001.

*James C. Bonner, Jr.*, for appellant.
*Thurbert E. Baker, Attorney General, Daniel G. Ashburn, Assistant Attorney General, William P. Rowe III*, for appellee.