817 So.2d 613 (2002)
Elliot L. GASTON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2001-CP-00369-COA.
Court of Appeals of Mississippi.
May 14, 2002.
*614 Elliot L. Gaston, appellant pro se.
Office of the Attorney General by Jeffrey A. Klingfuss, for appellee.
Before McMILLIN, C.J., BRIDGES, and IRVING, JJ.
*615 BRIDGES, J., for the Court.
¶ 1. Elliot Lance Gaston pled guilty to attempted strong-arm robbery in 1999, and the court sentenced him to fifteen years in prison with five years of post-release supervision, credit for time served, and the remainder of the sentence suspended. Gaston violated the terms of his post-release supervision, and the court sentenced him to fifteen years in prison, ten years suspended and three years of post-release supervision, with the remainder to be served. Gaston filed a motion for post-conviction relief on December 12, 2000, which the trial court dismissed on January 16, 2001, and he now appeals that dismissal, on the following four issues:
I. DID GASTON FILE HIS NOTICE OF APPEAL IN A TIMELY FASHION?
II. DID GASTON RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL?
III. WAS GASTON'S PLEA VOLUNTARY AND INTELLIGENT?
IV. DID THE COURT IMPROPERLY SENTENCE GASTON BY EXCEEDING THE MAXIMUM SENTENCE OR SUSPENDING HIS SENTENCE?

STANDARD OF REVIEW
¶ 2. "When reviewing a lower court's decision to deny a petition for post conviction relief this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous." Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss.1999).

ANALYSIS

I. DID GASTON FILE HIS NOTICE OF APPEAL IN A TIMELY FASHION?
¶ 3. The first issue before the Court is the threshold issue of subject matter jurisdiction. Notice of appeal must be filed with the trial court within thirty days of the order or judgment appealed. M.R.A.P. 4(a). All untimely filed appeals must be dismissed, unless in the interests of justice they should be granted. M.R.A.P. 2. On the face of the record, Gaston's appeal fails as untimely, as it was filed on February 26, 2001, after the expiration of the thirty day period which began on January 16. In his brief, Gaston fails to address the timeliness of his appeal. He does address it in his reply brief, asking the court to consider that his efforts to file are subject to the whims of the Parchman mail service.
¶ 4. Gaston also asks that in the interests of justice the Court treat his appeal as filed on the date of notarization at Parchman, February 13, which falls within the thirty day period for appeal. There is a question of whether the prison mailbox rule should apply to appeals. Accordingly,
[W]e hold that a pro se prisoner's motion for post-conviction relief is delivered for filing under the UPCCRA and the Mississippi Rules of Civil Procedure when the prisoner delivers the papers to prison authorities for mailing. Prison authorities may initiate such procedures as are necessary to document reliably the date of such delivery, by means of a prison mail log of legal mail or other expeditious means. Henceforth, an inmate's certificate of service will not suffice as proof.
Sykes v. State, 757 So.2d 997, 1000-1 (¶ 14) (Miss.2000).
¶ 5. However, the prison mailbox rule in Mississippi applies only to cases brought under the Uniform Post Conviction Collateral Relief Act (UPCCRA). Id. It is unclear whether in Mississippi the prison mailbox rule would apply to an appeal of a denial of a PCR motion. Gaston alleges that he sent his motion to proceed in forma pauperis into the prison mail system on *616 the day it was notarized. If so, and if the prison mailbox rule extends to appeals from PCR denials, then he properly brought his case before the jurisdiction of this Court.
¶ 6. A more serious question arises because the only evidence of the date of mailing comes from Gaston's non-evidentiary assertion in his reply brief that the date on which he had his appeal notarized corresponds with the date that he presented the appeal to prison officials for deposit in the mails. This evidence is by the rule of Sykes essentially useless to this Court, as it is of lesser veracity than the "inmate's certificate of service" that Sykes rejects. Id. No record of the date of mailing, such as the prison's official mail log, was provided to this Court, as Sykes envisions. The State is the movant in the request of dismissal for failure of timeliness; it bears the burden of proof. Since the State provides no evidence of the sort required by Sykes, their motion must fail.
¶ 7. Of the other states that have adopted a version of the federal prison mailbox rule found in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), Georgia favorably cites Sykes in declaring that all state civil post-conviction remedies are subject to the prison mailbox rule for pro se prisoners. Massaline v. Williams, 274 Ga. 552, 554 S.E.2d 720, 722 (2001). Massaline applies the rule to appeals from failed post-conviction relief petitions, including habeas corpus. Id. Massachusetts was, prior to 1993, the only state of eight that had considered the newly-minted prison mailbox rule to adopt it. Commonwealth v. Hartsgrove, 407 Mass. 441, 553 N.E.2d 1299, 1302 (1990). Massachusetts applied the rule in Houston to direct appeals, as well as civil post-conviction relief. Id. Mississippi considered adopting the rule in 1993, but ruled on a narrow point of law instead. Benbow v. State, 614 So.2d 398, 401-02 (Miss.1993).
¶ 8. We hold that in Mississippi the prison mailbox rule extends to all actions under the UPCCRA, and appeals in those actions. This merely clarifies the ruling in Sykes and brings Mississippi law into conformity with those jurisdictions that have adopted the prison mailbox rule after Houston.

II. DID GASTON RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL?
¶ 9. "To successfully claim ineffective assistance of counsel the Defendant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Moody v. State, 644 Sc.2d 451, 456 (Miss.1994). The Strickland test requires the defendant demonstrate first the deficiency of the counsel's performance, and second that the deficiency was sufficient to prejudice the defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. He faces a strong yet rebuttable presumption that counsel performed adequately, and the defendant must show a reasonable probability that but for counsel's errors, defendant would have received a different result. Moody, 644 So.2d at 456. The court must look at the totality of the circumstances, with deference towards counsel's actions, to determine a factual basis for the claim. Id. If the defendant raises questions of fact regarding either deficiency of counsel or prejudice, he is entitled to an evidentiary hearing. Id. If the court finds counsel was ineffective, the appropriate remedy is remand for a new trial. Id.
¶ 10. Gaston in his reply brief alleges coercion and misrepresentation by attorney John Weddle to secure Gaston's guilty plea before the court. Gaston initially hesitated before eventually pleading guilty to charges of attempted robbery. *617 The court questioned Gaston thoroughly about his plea, and noted his initial hesitation. The court also queried Gaston about his reticence, ultimately finding that he did voluntarily and intelligently plead his guilt.
¶ 11. Beyond assertions of coercion and misrepresentation by counsel, Gaston offers no evidence that he was misled. At no time under the direct questioning of the court did he express that he felt coercive force from counsel, or that he had any doubts about his sentencing options. "Th[e] [Mississippi Supreme] Court has implicitly recognized in the post-conviction relief context that where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit." Vielee v. State, 653 So.2d 920, 922 (Miss. 1995) (citing Brooks v. State, 573 So.2d 1350, 1354 (Miss.1990)). Gaston's claim lacks merit.

III. WAS GASTON'S PLEA VOLUNTARY AND INTELLIGENT?
¶ 12. This Court will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous. Stevenson v. State, 798 So.2d 599, 602(¶ 7) (Miss.Ct.App.2001). The burden of proving that a guilty plea was involuntary is on the defendant and must be proven by a preponderance of the evidence. Id.
¶ 13. Gaston admitted under oath to the allegations of the State. This vitiated the need for the State to provide any further evidence of his guilt:
None of this is to say that the defendant's admission, standing alone, may not suffice, nor that we may not take the testimony of the accused in conjunction with all else in deciding that there is an adequate factual basis for the plea. In the end there must be enough that the court may with confidence find the prosecution could prove the accused guilty of the crime charged, "that the defendant's conduct was within the ambit of that defined as criminal."
Corley v. State, 585 So.2d 765, 767 (Miss. 1991) (citing United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)).
¶ 14. Mississippi requires that all defendants who wish to enter a guilty plea answer a laundry-list of questions designed to test their soundness of mind and awareness of the charges against them:
A hearing was held that same day prior to the court's accepting Brown's guilty plea. ... The judge very clearly explained to Brown and his attorneys the consequences of Brown's guilty plea. Not only was there a factual basis for the guilty plea, but there was sufficient evidence adduced to support the judge's finding that the guilty plea was made intelligently and voluntarily.
Brown v. State, 533 So.2d 1118, 1124 (Miss. 1988).
¶ 15. Gaston appeared before the court, and answered in a laundry-list fashion a series of questions posed to him and others appearing before the court prefatory to his plea. The judge first swore all eight defendants, advised them of their rights to counsel during the plea proceedings, and began asking questions. The questions were, in order:
1. Were any of the pleadants under the influence of alcohol or controlled substances?
2. Were any of them suffering from any known mental illness?
3. When were the pleadants born?
4. What were their education levels?
5. Were the pleas offered voluntarily?
6. Were any threats or promises made to induce a plea?

*618 7. Did they understand that they were giving up many legal rights by pleading guilty?
8. Did they understand the meaning of the word waive?
9. Did they understand they were giving up the right to a jury trial?
10. Did they understand that the State did not need to prove each element beyond a reasonable doubt?
11. Did they understand they were waiving their right to remain silent?
12. Did they understand they were waiving their confrontation rights?
13. Did they understand they were waiving their subpoena rights?
14. Did they understand that a unanimous 12 person jury would be required to convict them if they went to trial?
15. Did they understand that they were surrendering the right to appeal on the merits of the case by pleading guilty?
¶ 16. Gaston did not demur to any question, nor did he indicate any confusion. He first refused to plead guilty to the armed robbery charges, and the judge later addressed him separately after the others had pled to their charges. Gaston then pled guilty and was sentenced, after averring before the judge that he was satisfied with his legal representation and affirming that he understood the nature of the charges. Gaston also affirmed his voluntariness in pleading guilty, contradicting the face of his appeal.
There is nothing in the record to suggest that Lott was offered any hopes of reward for entering his plea of guilty, or that he was coerced, threatened or intimidated into making it. To the contrary, the circuit court interrogated Lott thoroughly and carefully explained to him the full gamut of constitutional protections available to him as well as the ramifications of entering a guilty plea.
Lott v. State, 597 So.2d 627, 628 (Miss. 1992).
¶ 17. Gaston argues that the State made no showing on the record at the plea hearing of a factual basis for his guilt. But the State need not do so. "That factual basis may be formed by any facts presented before the court or otherwise in the record before the court." Gaskin v. State, 618 So.2d 103, 106 (Miss. 1993). Gaston averred his guilt several times before actually pleading guilty. "It is acceptable that the court make its decision according to inferences of guilt on the part of the defendant." Reed v. State, 799 So.2d 92, 97(¶ 13) (Miss.Ct.App.2001). Gaston's appeal based on voluntariness fails because his plea comports with the constitutional standard elucidated in United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

IV. DID THE COURT IMPROPERLY SENTENCE GASTON BY EXCEEDING THE MAXIMUM SENTENCE OR SUSPENDING HIS SENTENCE?
¶ 18. Sentencing within statutory guidelines is within the court's discretion. Johnson v. State, 461 So.2d 1288, 1292 (Miss.1984). A trial court will not be held in error or held to have abused discretion if the sentence imposed is within the limits fixed by statute. Id. Gaston asserts first that the court violated the statutory maximum when it sentenced him, and second that suspending any portion of his sentence was improper under Mississippi Code Annotated Section 47-7-33 (Rev.2000), since he was a felon.
¶ 19. The maximum Gaston could serve for attempted robbery is fifteen years in the aggregate. Miss.Code Ann. § 97-3-75 (Rev.2000). He was to serve five years under post-release supervision, *619 have his time served credited to his sentence, and the remainder suspended, totaling fifteen years. After he violated the terms of his post-release supervision, his suspended sentence was revoked, and Gaston was sentenced to serve three years in post-release supervision, with ten years suspended, and two years in prison, again totaling fifteen years.
¶ 20. Unfortunately for Gaston, his argument against suspending his sentence fails, because his sentence was suspended under Mississippi Code Annotated Section 47-7-34 (Rev.2000), and not under Mississippi Code Annotated Section 47-7-33 (Rev.2000). Gaston will serve no probation; he will undergo post-release supervision, an alternative to probation designed specifically for felons. Carter v. State, 754 So.2d 1207, 1208(¶ 4) (Miss.2000). Accordingly, Mississippi Code Annotated Section 47-7-33 (Rev.2000) does not govern his sentence; rather, his sentence falls under Mississippi Code Annotated Section 47-7-34 (Rev.2000) and comports fully with the statute.

CONCLUSION
¶ 21. Gaston's appeal meets the threshold jurisdictional issue of timeliness as we extend the prison mailbox rule to cover appeals from the denial of post-conviction relief. Gaston's substantive matters on appeal can be easily disposed of. His claim that he did not receive effective assistance of counsel fails as he does not allege specific instances of misconduct, nor does he provide any proof beyond his own affidavit, which is insufficient in Mississippi.
¶ 22. Gaston's claim that he pled involuntarily also falls by the wayside, because he averred twice on the record that he did plea of his own free will, absent coercion, and that he understood the nature of the charges against him. Finally, Gaston's claim that the court improperly sentenced him is a mistake in interpreting the law; Gaston confused post-release supervision with probation, and miscalculated the length of his sentence from the sentencing documents.
¶ 23. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT DISMISSING ELLIOT GASTON'S PETITION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.