Carl J. WOODY, Appellant,

v.

STATE of Oklahoma, ex rel. DE-
PARTMENT OF CORREC-
TIONS, Appellees.

No. 78405.

Supreme Court of Oklahoma.

March 31, 1992.

Carl J. Woody, pro se appellant.

KAUGER, Justice.

The issue presented is whether delivery of a petition in error by a *pro se* prisoner to prison officials for mailing to the Clerk of the Supreme Court is timely under 12 O.S. 1991 § 990A. We find that under the facts presented here that the petition in error was timely filed.[1]

---

1. We note that this rule applies only to incarcer- ated *pro se* prisoners.

## FACTS

On September 3, 1991, Carl J. Woody, a *pro se* prisoner filed a petition for a writ of mandamus asking the trial court to direct the Oklahoma Department of Corrections to reverse and expunge the disciplinary proceedings against him. On September 6, 1991, the trial court dismissed the petition, and Woody appealed the trial court's order. On October 3, 1991, Woody's Affidavit *In Forma Pauperis* was notarized. On October 4, 1991, the prison trust fund officer provided the Statement of Prison Account, and the prisoner allegedly placed his petition in error in the prison's mailbox. The petition in error was received by the Clerk of the Supreme Court on October 9, 1991—two days late. This Court issued a show cause order directing the prisoner to show cause why the appeal should not be dismissed as untimely. On November 20, 1991, the prisoner responded to the show cause order, and he attached a sworn affidavit stating that he had placed the petition in error in the prison mailbox on October 4, 1991.

UNDER THE FACTS PRESENTED, THE PETITION IN ERROR WAS FILED TIMELY ON THE DATE THE PRISONER DELIVERED THE PETITION IN ERROR TO THE PRISON AUTHORITIES FOR FORWARDING TO THE CLERK OF THE SUPREME COURT.

 This is the second time that we have visited the question of the timeliness of the filing of a petition in error by a *pro se* prisoner. In *L'Aquarius v. Maynard,* 634 P.2d 1310–11 (Okla.1981), the Court held that a prisoner's petition in error must be received by the Clerk on or before the due date. Under 12 O.S.1981 § 990,[2] the statute in effect at the time of *L'Aquarius,* the mailbox rule was not recognized. The mailbox rule has been applicable to the commercial practice since *Adams v. Lindsell,* [1818] 1 B & Ald 681.[3] Under the rule, a contract becomes effective on the date acceptance is posted in the mail. In 1991, a modified application of this rule became a part of appellate procedure. Under 12 O.S.1991 § 990A, the filing of a petition in error may be accomplished either by delivery to the Clerk of the Supreme Court, or by sending it by certified mail with return receipt to the Clerk. The date of mailing, as shown by the postmark or other proof from the post office constitutes the filing date.[4]

Here, the *pro se* prisoner asserts that he placed the petition in error in the prison's mailbox on October 4, 1991. The record does not include the envelope in which the petition was mailed.[5] Therefore, no information is available concerning the postmark or any other evidence of when the prison authorities in fact mailed it. However, the Affidavit *In Forma Pauperis* was notarized on October 3, 1991, and the Statement of Prison Account was signed by the trust fund officer on October 4, 1991. The prisoner submitted an *unchallenged* affidavit attesting that he placed the petition in error in the prison mailbox on October 4, 1991.

Were we to follow the *L'Aquarius* rationale under § 990A, *pro se* prisoners could be denied access to the court system[6] as

2. Title 12 O.S.1981 § 990 provides in pertinent part:
"An appeal to the Supreme Court may be commenced from an appealable disposition of a court or tribunal by filing with the Clerk of the Supreme Court a petition in error, within thirty (30) days from the date of the final order or judgment sought to be reviewed."

3. 1 S. Williston, *A Treatise on the Law of Contracts,* § 81 (W. Jaeger 3d ed. 1957).

4. Title 12 O.S.1991 § 990A provides in pertinent part:
"A. An appeal to the Supreme Court may be commenced by filing a petition in error with the Clerk of the Supreme Court within thirty

(30) days from the date the final order or judgment is filed. The filing of the petition in error may be accomplished either by delivery or by sending it by certified mail with return receipt requested to the Clerk of the Supreme Court. The date of mailing, as shown by the postmark or other proof from the post office of the date of mailing, shall constitute the date of filing of the petition in error...."

5. The Clerk of the Supreme Court did not retain the envelope.

6. Okla. Const. art. 2, § 6 provides:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for

well as equal protection of the law.[7] Because of the restraints imposed by imprisonment, a *pro se* prisoner would never be able to comply fully with the § 990A filing requirements. The *pro se* prisoner cannot take the steps which other litigants can to monitor the appeal process thereby ensuring that the court clerk receives the petition in error before the deadline. Unlike other litigants, a *pro se* prisoner cannot travel either to the Office of the Supreme Court Clerk to deliver the petition in error, or to the post office to mail the petition in error by certified mail. Because they are incarcerated, prisoners appearing without counsel must rely on the good faith of prison officials timely to mail their pleadings. If this trust is violated, either wilfully or neglectfully, the prisoner ordinarily is unable to prove who is at fault—the prisoner loses by default.[8]

In a similar case, the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266, 270–72, 108 S.Ct. 2379, 2382–83, 101 L.Ed.2d 245, 251–52 (1988), noted that the federal prisons have well-developed procedures for recording the date and time a prisoner leaves papers for mailing. The prison mail logs serve as a bright line to determine when the papers are given to the prison authorities. Our paperwork fails to disclose whether the Oklahoma prison system maintains a mail log. However, it is a procedure which should be in place.

The *Houston* Court held that a pleading is considered filed when it is delivered to prison officials by a *pro se* prisoner. The Court said:

"And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the

mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. **Pro se** prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the **pro se** prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped 'filed' on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access— the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice."

 We find the *Houston* rationale to be persuasive, and that regardless of *Houston*, the Okla. Const. art. 2, § 6, mandates such a result. This provision, which has no analogue in the United States Constitution, probably originated with the Magna Carta which provides that "To no one will we sell, to no one will we deny, or delay the right of justice." It is strikingly similar to the

every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

7. *Dowd v. United States*, 340 U.S. 206, 208, 71 S.Ct. 262, 263, 95 L.Ed. 215, 218 (1950).

8. *Haag v. State*, 591 So.2d 614, 616 (Fla.1992).

Okla. Const. art. 2, § 6.[9] The clear language of art. 2, § 6 requires that the courts must be open to all on the same terms without prejudice. The framers of the Constitution intended that all individuals without partiality could pursue an effective remedy designed to protect their basic and fundamental rights.[10] A discriminatory denial of a statutory right to appeal is a violation of an individual's equal protection rights,[11] and a denial of equal access to courts.[12] The constitutional guarantee of access to the courts is not an empty formality. We are unable to view this constitutional charge as an inconsequential right which can be avoided or ignored.[13]

After the enactment of § 990A, a rule other than the mailbox rule for incarcerated *pro se* prisoners would interject a degree of arbitrariness which could sabotage equal protection and equal access to the courts.[14] Under the facts presented, most significantly the unchallenged affidavit of the *pro se* prisoner, the petition in error was filed timely when the prisoner, on October 4, 1991, delivered the petition in error to the prison authorities for forwarding to the Clerk of the Supreme Court. This appeal shall proceed in its ordinary course, in the manner contemplated by the Rules of Appellate Procedure in Civil Cases, 12 O.S. 1991, Ch. 15, App. 2.

9. See note 6, supra. E. Coke, *The Second Part of the Institutes of the Laws of England,* pt. I, 53–56 (1642).

10. *Moses v. Hoebel,* 646 P.2d 601, 605 (Okla.1982).

11. *Dowd v. United States,* see note 7, supra.

12. *Moses v. Hoebel,* see note 10, supra.

13. *Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 675–77 (Utah 1985); *Daugaard v. Baltic Coop. Bldg. Supply Ass'n.,* 349 N.W.2d 419, 425 (S.D. 1984).

14. The Florida Supreme Court recently decided a similar case. In *Haag v. State,* see note 8, supra, a *pro se* prisoner deposited a motion for postconviction relief with the prison officials five days prior to its due date, but it was not stamped "filed" by the clerk until four days after

OPALA, C.J., and SIMMS, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

LAVENDER, J., concurs in result.

HODGES, V.C.J., and HARGRAVE, J., dissent.

the time limit had run. The Florida Court found that the mailbox rule protected both the *pro se* prisoner's equal protection rights as well as his right to equal access to the courts. It noted that if two prisoners delivered documents at the same time to prison officials facing the same deadline and circumstances beyond either's control prevented one of the documents from arriving timely, the prisoners' appeals would be handled differently. One would obtain a full hearing and the other would be denied relief. The *Haag* Court held: that the fundamental guarantee of equal protection and access to courts must be available to all through simple and direct means; that the right to access of courts must be administered in favor of justice and not bound by technicalities which will defeat the purpose of this guarantee; and that *Houston v. Lack,* 487 U.S. 266, 270–72, 108 S.Ct. 2379, 2382–83, 101 L.Ed.2d 245, 251–52 (1988), was consistent with the Florida Constitution.