2004 OK CIV APP 37

**Philip HALLADAY, Plaintiff/Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OKMULGEE, and Ernie Arocha, Defendants/Appellees.**

No. 99,801.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 16, 2004.

Phillip Halladay, Lexington, OK, Pro Se Plaintiff/Appellant.

Robert E. Applegate, Collins, Zorn & Wagner, P.C., Oklahoma City, OK, for Defendants/Appellees.

Opinion by RONALD J. STUBBLEFIELD, Judge.

¶ 1 This is a plaintiff's appeal from the grant of summary judgment to the board of county commissioners and an employee of the office of county sheriff in an action claiming civil rights violations by failing to protect the plaintiff when he was an inmate in a county jail and assaulted by other inmates. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme

Court Rule 1.36, 12 O.S.2001, ch. 15, app. 1. Based on review of the record on appeal and applicable law, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Plaintiff Phillip Halladay, an incarcerated inmate, filed a petition in the District Court of Okmulgee County against the Board of County Commissioners of Okmulgee County and Ernie Arocha, an employee of the Sheriff's Department,[1] (the County Defendants), claiming his civil rights were violated by the failure of the County Defendants to protect him from physical attack by other inmates when he was incarcerated in the county jail. He claimed he was assaulted twice, resulting in lasting injury to his knee, for which he sought one million dollars in actual damages and five million dollars in punitive damages.

¶ 3 The date of the filing of the petition is at issue. It was file-stamped January 24, 2002. That caused the County Defendants to file a motion to dismiss, claiming the action was barred by the two-year limitation period prescribed by 12 O.S.2001 § 95(3).[2] They alleged the assaults took place in December 1999, and that the action filed on January 24, 2002, was out of time. However, Plaintiff responded that he placed the petition in the custody of the prison officials for mailing on December 12, 2001. He argued that under the "prison mailbox rule" this was timely. He attached documentation to his response, which tended to prove that he did send mail to the Court Clerk of Okmulgee County on that date.

¶ 4 It was discovered that the motion had been received by the Court Clerk sometime in December 2001. Thus, the District Court resolved the motion to dismiss in Plaintiff's favor by a letter order, dated April 26, 2002, which stated:

[T]his case was received by the Okmulgee County Clerk's[3] office in late December, 2001, but was not file stamped until the 24th of January, 2002, through no fault of the Plaintiff's. The Court therefore finds that this cause of action was brought within the statute of limitations period as provided by statute. Accordingly the Motion to Dismiss on behalf of the Defendants shall be dismissed.

¶ 5 Thereafter, there was a short-lived removal of the action to federal court, then a flurry of discovery-related matters. After Plaintiff's deposition was taken, the County Defendants moved for summary judgment. The Board of County Commissioners sought judgment based on the fact that the claims of Plaintiff dealt with the office of Sheriff, an independent agency which it did not control. Ernie Arocha sought judgment based on Plaintiff's deposition admissions that at the time of the purported attacks Arocha was not the Sheriff of Okmulgee County, but merely a D.A.R.E. officer with the Office of Sheriff, and that Arocha had not had any contact with the Plaintiff in regard to the purported assaults. Both parties also reurged, somewhat half-heartedly, the statute of limitations as a basis for summary judgment because of Plaintiff's deposition admissions that the first assault occurred in May 1999, and the second assault no later than December 20, 1999.

¶ 6 Plaintiff responded, appending a variety of materials to his pleading. Then, on August 11, 2003, the County Defendants filed a "reply," which gave greater emphasis to the limitation defense, and included new evidentiary material—an affidavit from the Court Clerk in which she stated that the petition of Plaintiff could not have been received prior to December 28, 2001.

¶ 7 The Trial Court granted summary judgment solely on the basis of the statute of limitations. Plaintiff appeals.

---

1. At the time the lawsuit was filed, Arocha was the County Sheriff of Okmulgee County. However, at the time of the events described in the Petition of Plaintiff, he was not.

2. The statute is currently found at 12 O.S. Supp. 2003 § 95(3).

3. This appears to have been a misstatement, with the Court meaning the Okmulgee County District Court Clerk.

## STANDARD OF REVIEW

¶ 8 Summary judgment should be granted only where it is clear from the evidentiary materials that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. *First Nat'l Bank and Trust Co. of Vinita v. Kissee,* 1993 OK 96, ¶ 7, 859 P.2d 502, 505. On reviewing the lower court's grant of summary judgment, this Court must view all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the party opposing the motion. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

## ANALYSIS

¶ 9 Plaintiff claims the Trial Court's grant of summary judgment was erroneous because (1) under the "mailbox rule" his petition was timely filed where he put it into the hands of correctional officials on December 12, 2001; (2) the affidavit of the Court Clerk was not admissible because it was dated December 9, 2002, but not received by him until August 18, 2003 (presumably received with the reply of the Defendants, which bears a mailing date of August 11, 2003); and, (3) the Trial Court did not allow Plaintiff to be heard by teleconference, although he had filed a prior motion asking to be heard.

¶ 10 The parties do not dispute that the applicable statute of limitations is the two-year period set out in 12 O.S.2001 § 95(3). Plaintiff also admitted in his deposition that the first assault in the county jail occurred in May 1999, and that the second assault occurred in December 1999, while he was held in the "P.C. tank," and that he was moved from that holding cell after his criminal conviction on December 20, 1999.

¶ 11 The Court Clerk, Linda Beaver, stated in her affidavit that the Plaintiff's petition was received at her office and given a case number, but not immediately filed until Plaintiff's motion to proceed without payment of court costs was reviewed by the district judge. Beaver stated that from examination of the filing dates of the cases numbered immediately before and immediately after the number assigned to Plaintiff's

case, Plaintiff's petition could not have been received before December 28, 2001.

¶ 12 In light of Plaintiff's admissions in his deposition and the affidavit of Linda Beaver, it was *prima facie* established that Plaintiff's petition was not filed within two years of the acts which formed the basis of his claim, unless the December 12th date—the date Plaintiff gave the petition to the correctional officials to be mailed—is, by operation of law or equity, determined to be the date Plaintiff filed his cause of action.

¶ 13 The Oklahoma Supreme Court recognizes a "mailbox rule" for appeals filed by *pro se* incarcerated prisoners—that the date the prisoner turns a petition in error over to correctional authorities for mailing to the court is the date the petition in error is deemed filed. The Court adopted the rule in *Woody v. State ex rel. Dept. of Corrections,* 1992 OK 45, 833 P.2d 257, citing the United States Supreme Court case of *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), which dealt with the timeliness of an inmate's filing of a *pro se* notice of appeal. The Oklahoma Supreme Court quoted the following passage from *Houston:*

> "And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can

never be *sure* that it will ultimately get stamped 'filed' on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice."

*Woody* at ¶ 8, 833 P.2d at 259. Relying on this analysis, the *Woody* Court determined that, in regard to incarcerated prisoners' appeals, a "mailbox" rule was necessary to afford *pro se* inmates equal protection and to prevent a denial of equal access to the courts. The rule is now codified as Supreme Court Rule 1.4(d), 12 O.S.2001, ch. 15, app. 1.

¶ 14 This case does not deal directly with the filing of an appeal or a notice of appeal. It deals with the timeliness of a civil action filed in the district court. Civil actions can only be brought within the time periods specified in 12 O.S.2001 § 95, after a cause of action has accrued. In this instance, Plaintiff's cause is controlled by section 95(3) which provides for a two-year limitation period, and his cause of action would have accrued at the time of the alleged assaults.

¶ 15 A civil action is brought or commenced by "filing a petition with the court." 12 O.S.2001 § 2003. Thus, in order to timely bring his civil action, Plaintiff had to file his petition with the District Court of Okmulgee County within two years from the date of the last alleged assault, which may have occurred as late as December 20, 1999. Evidentiary materials do indicate that he gave the petition to correctional officials for mailing on December 12, 2001.

¶ 16 The question is whether, in this particular instance, the "mailbox rule" should be considered the filing date of the civil action brought by the incarcerated *pro se* Plaintiff. We conclude it should, because we find the rationale of *Woody* and *Houston* equally applicable to this case. It cannot be denied that the Plaintiff did not have control over the submission of his petition to the District Court of Okmulgee County. Like the *pro se* inmate in *Houston*, no matter how far in advance he may have delivered his petition to the prison authorities, he could never be sure that it would ultimately get stamped "filed" before the running of the statute of limitations. Furthermore, he gave the mailing to the prison authorities within the time that normally would have assured a timely filing, if December 20, 2001, is found to be the date the limitation period ended.

 ¶ 17 There is an additional rationale favoring reversal of this summary judgment. Plaintiff claims he should have been heard on the motion, by teleconference. The Trial Court had authority under Rule 13(f), Rules of the District Court, 12 O.S. Supp.2003, ch. 2, app., to determine the motion without a hearing. However, we conclude that in this instance the timing of the Trial Court's judgment did violate Rule 13. The County Defendants filed a "reply" summary judgment pleading on August 12, 2003, and that pleading contained new evidentiary material-the affidavit of the Court Clerk. Then the Trial Court ruled on the motions for summary judgment seven days later, on August 19, 2003, citing the Court Clerk's affidavit as a crucial bit of evidence determinative of the limitations issue. Rule 13 does not specify any "reply" pleading, but the rule does give a party 15 days to respond to a motion for summary judgment. Rule 13(b). We conclude that the spirit of the rule requires that a party have the 15 days to respond to any affirmative summary judgment pleading which raises new issues or submits new evidentiary materials. Thus, we find the grant of summary judgment only seven days after the filing of the County Defendants' "reply" to be error.

## CONCLUSION

¶ 18 Based on the foregoing rationale, we conclude that the Trial Court erred in grant-

ing summary judgment in favor of the County Defendants.[4] Accordingly, that judgment must be reversed.

¶ 19 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

TAYLOR, P.J., and GOODMAN, J., concur.

---

4. The Trial Court did not rule on the merits of the other legal arguments proposed by the County Defendants in support of summary judgment— those other than the limitations issue. Because the Trial Court has not first ruled on those issues, we may not address the merits of those issues in this appeal.