Louis ROBERTSON, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2003–SC–0948–DG.

Supreme Court of Kentucky.

Nov. 23, 2005.

Christopher N. Lasch, Goodwin & Lasch, PSC, Louisville, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Todd D. Ferguson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

In 1997, Appellant, Louis Robertson, was convicted by a Nelson Circuit Court jury of five counts of sodomy in the first degree and five counts of sexual abuse in the first degree and sentenced to 100 years in prison. We affirmed his convictions and sentences by an opinion rendered on February 11, 1999.

Appellant claims that on February 5, 2002, while incarcerated in the Eastern Kentucky Correctional Complex (EKCC), he delivered a properly prepared and addressed *pro se* RCr 11.42 motion to vacate, set aside or correct his sentence, along with other related motions, to the EKCC legal mail clerk for mailing. In support of this claim, he has filed a copy of what purports to be the EKCC "Legal Mail Log Record" for that date, which reflects two items of mail received from Appellant, one addressed to the Commonwealth's Attorney for the Tenth Judicial Circuit (which includes the Nelson Circuit Court) and the other addressed to the Nelson Circuit Court clerk. However, the RCr 11.42 motion was not "filed" in the office of the Nelson Circuit Court clerk until February 25, 2002, twenty days after Appellant claims to have delivered it to the prison legal mail clerk and fourteen days after the expiration of the three-year period of limitation for filing such a motion. RCr 11.42(10). The Nelson Circuit Court dismissed the motion as untimely filed, and the Court of Appeals affirmed. We now reverse and remand to the Nelson Circuit Court for an evidentiary hearing to determine whether the three-year period of limitation was equitably tolled in this case.

Criminal Rule (RCr) 11.42(10) provides:

Any motion under this rule *shall be filed* within three years after the judgment becomes final, unless the motion alleges and the movant proves either:

(a) that the facts upon which the claim is predicated were unknown to the movant and could not have been ascertained by the exercise of due diligence; or

(b) that the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.

(Emphasis added.)

Both the Nelson Circuit Court and the Court of Appeals correctly concluded that the "shall be filed" requirement was mandatory and that neither had authority to *sua sponte* adopt a so-called "prison mailbox rule." In *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the United States Supreme Court adopted such a rule for the filing of a notice of appeal by a *pro se* prisoner. In that case, the prisoner had deposited a notice of appeal with prison authorities for mailing to the court on the twenty-seventh day after entry of judgment denying his petition for a writ of habeas corpus; but the clerk did not receive and file the notice until the thirty-first day, one day after the period of limitation had expired. Fed. R.App. P. 4(a)(1). The Court held that the notice of appeal was "filed" when the prisoner deposited it with prison authorities for mailing. *Houston*, 487 U.S. at 270–71, 108 S.Ct. at 2382 (noting that "[s]uch prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline"). Appellant urges us to adopt the *Houston* "prison mailbox rule" for the filing of pleadings by *pro se* prisoners in Kentucky courts.

Appellant's request is not meritless in this case, especially since RCr 11.42(10) does not specify how or where the motion

"shall be filed" (though RCr 11.42(1) provides that a prisoner may "proceed directly by motion in the court that imposed the sentence"). Other rules, however, do specify where pleadings must be filed, *e.g.,* CR 73.01(2) ("appeals shall be taken to the next higher court by filing a notice of appeal in the court from which the appeal is taken"). We are reluctant to *carte blanche* amend our rules without following the formal procedures established for such amendments. CR 87. Furthermore, a blanket adoption of a "prison mailbox rule" could be construed as an attempt to also amend, *sua sponte,* statutes of limitation adopted by the General Assembly. *See, e.g.,* KRS 13B.140(1) ("A party shall institute an appeal by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes, within thirty (30) days ...."); KRS 24A.120(2) ("Such adversary proceeding shall be filed in Circuit Court ...."); KRS 61.120(2) ("Provided, however, that the notice of appeal and order appealed from shall be filed with the clerk of the Court of Appeals within thirty (30) days ...."); KRS 351.194(8) ("An appeal of an order of the commission shall be filed in the Franklin Circuit Court within thirty (30) days ...."); KRS 419.130(1) ("Any party to a hearing on a writ [of habeas corpus] may appeal to the Court of Appeals by filing with the clerk of the court, within thirty (30) days ....").

Perceiving the possibility of unforeseen mischief fostered by otherwise good intentions, we decline to adopt the fiction that "filing" means delivery to prison authorities. As suggested by the dissenters in *Houston,* we might next be called upon to determine whether a person living abroad can "file" a necessary pleading by delivering it to a United States consul, or whether a soldier in a war zone can do so by delivering it to his or her commanding officer. *Houston,* 487 U.S. at 277, 108 S.Ct. at 2385 (Scalia, J., dissenting).

For similar reasons, the Supreme Court of Wisconsin declined to adopt a "prison mailbox rule." *State ex rel. Nichols v. Litscher,* 247 Wis.2d 1013, 635 N.W.2d 292, 295 (2001) ("We decline to interpret the term 'file' in § 808.10 and § 809.62(1) to mean 'deposit in a prison mailbox.'"). However, like the majority in *Houston,* that court recognized that *pro se* prisoners are without options when it comes to "filing" petitions.

> When pro se prisoners seek to file petitions, their control over the filing process is circumscribed by prison rules and procedures. Pro se prisoners' choice in method of filing is no choice at all. They must rely on the "vagaries of the mail." Other petitioners may personally deliver their petitions to the clerk of court's office, even at the last possible moment. We discern no convincing reason why pro se prisoners who act more promptly and otherwise comply with filing requirements should be placed at a disadvantage.

*Id.* at 299. *Nichols* held that if the *pro se* petitioner has otherwise complied with all of the requisites for filing a petition, the deadline for such filing is tolled on the date the prisoner delivers the correctly addressed petition to the proper prison authorities for mailing. *Id.* at 298–99.

The *Nichols* remedy is similar to the equitable tolling remedy fashioned by most federal circuit courts of appeal to grant relief to deserving *pro se* prisoners from the one-year period of limitation imposed by 28 U.S.C. § 2255[1] for filing a petition for a writ of habeas corpus. Similar to

1. This section was enacted as part of the Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), Pub.L. 104–132, Title I, § 105, 110 Stat. 1220 (1996).

RCr 11.42(10), that section provides in pertinent part:

A 1–year period of limitation shall apply to a motion under this section.

The limitation period shall run from the latest of -

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, ... and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

In *Dunlap v. United States,* 250 F.3d 1001 (6th Cir.2001), the United States Court of Appeals for the Sixth Circuit adopted for equitable tolling purposes in habeas cases the same five-factor test it had approved for employment discrimination cases in *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.1988):(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap,* 250 F.3d at 1008–09.

Considering the similarities between 28 U.S.C. § 2255 and RCr 11.42(10), and the fact that the denial of a motion under RCr 11.42 often results in the filing of a habeas petition within the jurisdiction of the Sixth Circuit, we now adopt the *Dunlap* test for determining whether equitable tolling is applicable to an otherwise limitation-barred RCr 11.42 motion. *Dunlap* factors one, two, and five are essentially incorporated within RCr 11.42(10)(a). Thus, the primary considerations adopted from *Dunlap* are factors three (diligence) and four (prejudice).

Appellant does not claim ignorance of the legal requirements for filing his RCr 11.42 motion. Thus, *Dunlap* factors one, two, and five and RCr 11.42(10)(a) do not apply to his late motion. If, indeed, Appellant delivered a properly prepared and properly addressed motion to the appropriate prison authorities prior to the expiration of the three-year limitation period, then he did "all that could reasonably be expected to get the [motion] to its destination within the required [time limit]," *Fallen v. United States,* 378 U.S. 139, 144, 84 S.Ct. 1689, 1692–93, 12 L.Ed.2d 760 (1964), *superseded by rule amendment as stated in Carlisle v. United States,* 517 U.S. 416, 424, 116 S.Ct. 1460, 1465, 134 L.Ed.2d 613 (1996), and, thus, satisfied *Dunlap* factor three (diligence). *Dunlap* factor four (prejudice) ordinarily would not militate against equitable tolling under these circumstances, because there would seem to be no more prejudice to the Commonwealth to permit Appellant to proceed with his motion than if the motion had actually been received and filed by the Nelson Circuit Clerk on or before February 11, 2002. However, the appropriate forum for finding facts militating for or against equitable tolling is the circuit court; and the Nelson Circuit Court has never held an evidentiary hearing on the issue of whether Appellant actually delivered a properly prepared and addressed RCr 11.42 motion to the appropriate EKCC prison authorities for mailing prior to the expiration of the limitation period.

Accordingly, we reverse the Court of Appeals and remand this case to the Nelson Circuit Court for an evidentiary hearing on the issue of equitable tolling and any other necessary proceedings not inconsistent with the content of this opinion.

LAMBERT, C.J.; GRAVES, and JOHNSTONE, JJ., concur.

SCOTT, J., concurs in part and dissents in part by separate opinion.

ROACH, J., dissents by separate opinion.

WINTERSHEIMER, J., dissents by separate opinion.

Opinion by Justice SCOTT Concurring in Part and Dissenting in Part.

I concur in that this court has at least adopted "an equitable tolling" rule, which may provide relief to prisoners when they have done "all that could reasonably be expected to get the [motion] to its destination within the required [time limit]."

I dissent because the majority has timidly strolled off into the night in the joyful company of a dissenting position in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)—the majority in which, adopted what is now called the "prison mailbox rule," a more practical rule that simply relies on the "prison mail logs" to determine if a court document was given to the prison authorities prior to the limitations deadline.

The Supreme Court [has] held that [a] notice of appeal was timely filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk," *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), in part because "the moment at which pro se prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities, not receipt by the clerk." Id. at 275, 108 S.Ct. at 2384. The Ninth Circuit has held that this "mailbox rule" also applies in determining when an application for state postconviction review is "properly filed" for purposes of tolling the AEDPA's limitations period. *Anthony v. Cambra*, 236 F.3d 568 (9th Cir.2000); *Saffold v. Newland*, 224 F.3d 1087 (9th Cir.2000); 28 U.S.C. § 2244(d)(2). The Sixth Circuit has recently determined that the *Houston v. Lack* "mailbox rule" applies also to civil complaints filed in federal district court by pro se prisoners. *Richard v. Ray*, 290 F.3d 810 (6th Cir.2002).

It appears that the majority of state courts that have considered the issue have permitted pleadings of pro se prisoners to be deemed filed at the time they are deposited in the prison mail system. *See Massaline v. Williams*, 274 Ga. 552, 554 S.E.2d 720, 722 (2001) (citing *State v. Hurt*, 107 Wash.App. 816, 27 P.3d 1276, 1278 (2001); *Sykes v. Mississippi*, 757 So.2d 997, 1000–01 (Miss.2000); *State ex rel. Egana v. Louisiana*, 771 So.2d 638 (La., 2000); *Taylor v. McKune*, 25 Kan. App.2d 283, 962 P.2d 566, 569–70 (1998); *Commonwealth v. Jones*, 549 Pa. 58, 700 A.2d 423, 426 (1997); *Munson v. State*, 128 Idaho 639, 917 P.2d 796, 799–800 (1996); *Mayer v. Arizona*, 184 Ariz. 242, 908 P.2d 56,57 (App.1995); *Ex parte Williams*, 651 So.2d 569, 571 (Ala.1992); *In re Jordan*, 4 Cal.4th 116, 13 Cal.Rptr.2d 878, 840 P.2d 983, 985 (1992); *Woody v. Oklahoma ex rel. Dept. of Corrections*, 1992 OK 45, 833 P.2d 257, 259–60 (Okla.1992); *Haag v. Florida*, 591 So.2d 614, 617 (Fla.1992);*Kellogg v. Journal Communications*, 108 Nev. 474, 835 P.2d 12, 13–14 (1992);*Commonwealth v. Hartsgrove*, 407 Mass. 441, 553 N.E.2d 1299, 1301–02 (1990); *See also Setala v. J.C. Penney Company*, 97 Hawai'i 484, 40 P.3d 886 (Haw.2002); *Hickey v. Oregon State Penitentiary*, 127 Or.App.

727, 874 P.2d 102 (1994) (applying Oregon law); *McGill v. Indiana Dept. of Correction*, 636 N.E.2d 199 (Ind.App.1994); *See also State v. Parker*, 936 P.2d 1118, 1120–21 (Utah App.1997) (noting, "We understand why many of our sister states have decided to adopt *Houston's* interpretation of the federal rules to their own state rules of procedure," but leaving the question for the state supreme court to decide).

At least one state has amended its procedural rules to create a "prison mailbox rule." The Tennessee Supreme Court amended Tenn. R. Civ. P. 5.06 on July 1, 1997 to liberalize the filing rules for incarcerated pro se prisoners. From and after that date, papers prepared by or filed on behalf of an incarcerated pro se prisoner are deemed to have been filed with the trial court when they are "delivered to the appropriate individual at the correctional facility."

In defense of adopting the "prison mailbox rule" at this time, I would note that we have a finite number of trial judges and time to handle an ever increasing docket of cases—and by depending on "equitable tolling" to solve the problem, we have created another hearing with multiple briefs and evidentiary questions prior to the trial court's thoughtful review and ruling.

Adopting the "prison mailbox rule" would have been so much simpler for everyone.

Dissenting Opinion by Justice ROACH.

I concur with the majority's conclusion that RCr 11.42(10) is subject to equitable tolling. However, the majority, without any explanation, has adopted the five-factor test for equitable tolling announced in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir.2001). In doing so, the majority has rejected the "extraordinary circumstances" test adopted by every federal court of appeals except for the Sixth Cir-

cuit. I believe the majority's approach is mistaken, and I dissent from that portion of the majority opinion.

Every case I have read in this area indicates that, at the very least, equitable tolling should be available only in rare cases. This principle is curiously absent from the majority opinion, although even the Sixth Circuit, whose test the majority has indiscriminately adopted, recognizes it. *See, e.g., Dunlap*, 250 F.3d at 1008 ("[W]e share in Respondent's concern that equitable tolling be applied sparingly . . . .").

In particular, I think equitable tolling should only be available when a movant can demonstrate that the untimeliness of his filing was "because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir.1999). This is the view of every federal circuit other than the Sixth Circuit. *See Trenkler v. United States*, 268 F.3d 16, 25 (1st Cir.2001) ("[T]he doctrine of equitable tolling is available only in rare cases where, for example, extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was materially misled into missing the deadline. Equitable tolling is not warranted where the claimant simply failed to exercise due diligence in preserving his legal rights. In a nutshell, equitable tolling is reserved for exceptional cases." (citations, internal quotation marks, and internal punctuation omitted)), *cert. denied*, 542 U.S. 921, 124 S.Ct. 2886, 159 L.Ed.2d 779 (2004); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.) ("Equitable tolling applies only in the rare and exceptional circumstance. In order to equitably toll the one-year period of limitations, Smith must show that extraordinary circumstances prevented him from filing his petition on time." (citation, internal quotation marks, and internal punctuation

omitted)), *cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000); *Johnson v. Hendricks,* 314 F.3d 159, 162 (3d Cir. 2002) ("However, equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Equitable tolling is permitted if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum." (citations, internal quotation marks, and internal punctuation omitted)), *cert. denied,* 538 U.S. 1022, 123 S.Ct. 1950, 155 L.Ed.2d 865 (2003); *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir.2003) ("Equitable tolling is appropriate when, but only when, extraordinary circumstances beyond the petitioner's control prevented him from complying with the statutory time limit. Accordingly, under our existing extraordinary circumstances test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." (citations, internal quotation marks, and internal punctuation omitted)), *cert. denied,* 541 U.S. 905, 124 S.Ct. 1605, 158 L.Ed.2d 248 (2004); *United States v. Patterson,* 211 F.3d 927, 930–31 (5th Cir.2000) ("Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." (citation and internal quotation marks omitted)); *United States. v. Marcello,* 212 F.3d 1005, 1010 (7th Cir.) ("Extraordinary circumstances far beyond the litigant's control must have prevented timely filing."), *cert. denied,* 531 U.S. 878, 121 S.Ct. 188, 148 L.Ed.2d 130 (2000); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir.2000) ("Equitable tolling is proper only when extraordinary circumstances be-

yond a prisoner's control make it impossible to file a petition on time."), *cert. denied,* 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001); *Shannon v. Newland,* 410 F.3d 1083, 1089–90 (9th Cir.2005) ("Equitable tolling is available only when extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time. Extraordinary circumstances exist when wrongful conduct prevents a prisoner from filing." (citation, internal quotation marks, and internal punctuation omitted)); *Burger v. Scott,* 317 F.3d 1133, 1141 (10th Cir.2003) (limiting equitable tolling to "rare and exceptional" circumstances "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control" (citation and internal quotation marks omitted)); *Jones v. United States,* 304 F.3d 1035, 1040 (11th Cir.2002) ("[E]quitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." (citation and internal quotation marks omitted)).

One would think that this overwhelming weight of authority would be worthy of at least some analysis by the majority. Instead, they are content to adopt the minority position of *Dunlap.* The majority is committed to guiding the trial court to the "right" answer. To that end, they imply the defendant is entitled to equitable tolling so long as the trial court answers in the affirmative just one factual question: whether Appellant "actually delivered a properly prepared and addressed RCr 11.42 motion to the appropriate EKKC prison authorities for mailing prior to the expiration of the limitation period." *Ante* at 792. But such a simple approach belies the complexity of the analysis the trial court should undertake in applying an eq-

uitable remedy. Not only that, it is little more than an adoption of the prison mailbox rule by another name. If the majority is correct that under *Dunlap* the remedy of equitable tolling can be determined by asking that single question, then it is merely further proof that the *Dunlap* approach is inferior to the extraordinary circumstances test.

I believe the trial court's analysis should consist of more than the rote application of a five-factor balancing test. Equitable tolling, like most equitable remedies, requires an extraordinary intrusion into the normal judicial and administrative order and, as such, requires that the trial court engage in a more robust examination of the circumstances allegedly justifying such an intrusion before allowing it. For example, the trial court should determine why Appellant waited so late to file his petition. Was it truly beyond his control to wait to file his petition until so late in the three year period? If not, then it is likely that he is not entitled to an equitable remedy. *See Coleman v. Johnson,* 184 F.3d 398, 403 (5th Cir.1999) (noting that "equity is not intended for those who sleep on their rights" and denying the remedy of equitable tolling to a defendant who inadvertently filed a petition late). Regardless of the specific factors to be applied, however, the equitable tolling remedy should not be available whenever a defendant can show that his petition was late because of excusable neglect. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990) ("[T]the principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect.").

As an extraordinary remedy, equitable tolling should be reserved for extraordinary circumstances. Therefore, I believe we should adopt the extraordinary circumstances test that has been adopted by every federal court of appeals except one and remand this matter to the trial court to determine whether Appellant's untimely filing was because of extraordinary circumstances that were both beyond his control and unavoidable even with diligence. Because this Court has adopted the wrong test without a word of analysis and because it has reduced this test to a single factual question, I respectfully dissent.

Dissenting Opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because this Court does not have authority to amend statutes of limitations adopted by the legislature regarding all pro se filings.

Initially, Robertson was convicted of five counts of sexual abuse. He was sentenced to one hundred years in prison and his conviction was affirmed by this Court in 1999. In 2002, Robertson, pro se, mailed a motion to vacate the judgment pursuant to RCr 11.42. Although the pleadings were mailed according to the procedures of the institution and recorded in the mail log for February 5, 2002, the pleadings were not marked filed by the Nelson Circuit Clerk until February 25, 2002, more than 20 days after the mail was deposited and more than three years after the conviction was final. The trial judge ruled against Robertson, holding that the three-year time limit was jurisdictional and required strict compliance. The last day to file for RCr 11.42 relief was February 11, 2002.

Robertson relies upon the so-called mailbox rule endorsed by the United States Supreme Court in *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). The applicable federal statute in this type of situation only provides for a one-year limitation which is different from the three-year period of time allowed under RCr 11.42(10). The Kentucky rule

provides three times as much time to a prisoner as the federal rule. There is really no reason to allow a pro se prisoner to circumvent clearly established rules and statutes.

Clearly, relaxation of the rules regarding statutes of limitations and the appropriate time for the submission of filings directly lead to additional delays in the judicial system. They afford no benefit to the orderly process of justice in our system. To favor a pro se prisoner over a prisoner who is represented by counsel would be obviously unfair. The dilution of reasonable rules by judicial decision is unacceptable.

Justice Antonin Scalia, joined by Chief Justice Renquist and Justices Kennedy and O'Connor, in dissent of *Houston*, sums up the arguments as follows:

> Today's decision obliterates the line between textual construction and textual enactment. It would be within the realm of normal judicial creativity (though in my view wrong) to interpret the phrase "filed with the clerk" to mean "mailed to the clerk," or even "mailed to the clerk or given to a person bearing an obligation to mail to the clerk." But interpreting it to mean "delivered to the clerk or, if you are a prisoner, delivered to your warden" is no more acceptable than any of an infinite number of variants .... Like these other examples, the Court's rule makes a good deal of sense. I dissent only because it is not the rule we have promulgated ....

Recognizing the differences that exist between the state and federal statutes and rules, I must agree.

It is of interest to note that a rule change which would mirror the arguments of Robertson in this case was unanimously rejected by this Court in 2004. Here, Robertson was not diligent and thus should not be allowed to use the appellate process to circumvent clearly established rules. The decision could easily result in a flood of overdue and tardy motions.