Michael Allen HALLUM, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Joe B. Jones, Appellant,

v.

Commonwealth of Kentucky, Appellee.

Nos. 2009–SC–000762–DG,
2010–SC–000049–DG.

Supreme Court of Kentucky.

April 21, 2011.

As Modified Aug. 25, 2011.

Brandon Neil Jewell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellants.

Jack Conway, Attorney General of Kentucky, Jeffrey Allan Cross, Bryan Darwin Morrow, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellees.

Opinion of the Court by Justice SCOTT.

Today, in a consolidated appeal, we are confronted with one of the final cases concerning an inmate's *pro se* documents

timely placed in the prison mail system, yet filed in the trial court after the deadline expired. We have resolved this inequitable paradigm prospectively by amending our rules to add the prison mailbox rule, RCr 12.04(5).[1]

## I. Background

While incarcerated in different penal systems, Appellants, Joe Jones and Michael Hallum, each filed an RCr 11.42 motion for post-conviction relief. Following denial of these motions by the trial court, each Appellant, *pro se*,[2] filed a notice of appeal along with a motion to proceed *in forma pauperis*. The Court of Appeals dismissed both appeals due to each Appellant's respective failure to file the motion to proceed *in forma pauperis* within the mandatory 30–day time period. RCr 12.04(3) ("[t]he time within which an appeal may be taken shall be thirty (30) days after the date of entry of the judgment or order from which it is taken.").[3]

Jones placed his *pro se* notice of appeal and motion to proceed *in forma pauperis* in the prison mail system on March 15, three days prior to the 30–day deadline.[4] However, the motion was not filed, nor was the notice marked tendered, until March 19—one day outside the 30–day

deadline. Hallum placed his *pro se* notice of appeal and motion to proceed *in forma pauperis* in the prison mail system on November 2, three days prior to the 30–day deadline.[5] However, the motion was filed and the notice marked tendered on November 13—eight days after the deadline.

We granted each Appellant's petition for discretionary review, consolidated the cases, and now reverse the Court of Appeals' decisions.

## II. Analysis

### A. The Prison Mailbox Rule

Almost seventy years ago, the Supreme Court of the United States proclaimed that it is "beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (stating that the Court recognized this right in *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941)). The Court further stated that this fundamental right required "inmate access to the courts [that] is adequate, effective, and meaningful." *Id.* at 822, 97 S.Ct. 1491.

This constitutional axiom is no less applicable during the inmate's appeal, espe-

---

1. RCr 12.04(5) states: "If an inmate files a notice of appeal in a criminal case, the notice shall be considered filed if its envelope is officially marked as having been deposited in the institution's internal mail system on or before the last day for filing with sufficient First Class postage prepaid."

2. The Commonwealth briefly argues that Jones was represented by counsel and cannot reap the benefits of the prison mailbox rule. This argument is meritless, as the record clearly evinces that Jones, *pro se*, submitted his notice of appeal and *in forma pauperis* motion: the documents are signed "Joe B. Jones, pro se" and "Joe Jones, PRO SE."

3. As a condition precedent to having an appeal filed and docketed, an appellant must

pay the filing fee. When juxtaposing our rules of procedure, an indigent appellant must file both the motion to proceed *in forma pauperis* and notice of appeal within the 30–day period to have his appeal filed and docketed. *See* CR 73.02(*l*)(b)("[i]f timely tendered and accompanied by a motion to proceed *in forma pauperis* supported by an affidavit, a notice of appeal or cross-appeal shall be considered timely.").

4. The trial court entered the order denying Jones' motion on February 16.

5. The trial court entered the order denying Hallum's motion on October 6, 2008.

cially when he is without the assistance of an attorney to help in filing his notice of appeal. As such, the High Court recognized the plight of *pro se* prisoners constricts their ability to "take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline." *Houston v. Lack,* 487 U.S. 266, 270–71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Prisoners lack the ability to personally deliver the notice, mail and track the notice through the U.S. Postal Service, or phone the court to ensure receipt. *Id.* at 271, 108 S.Ct. 2379. Consequently, the Court adopted the prison mailbox rule, which treated the *pro se* prisoner's notice of appeal as "filed" when he delivered it to the authorities for forwarding to the trial court. *Id.* at 270, 108 S.Ct. 2379.

Numerous states have adopted versions of the prison mailbox rule, yet Kentucky lagged behind.[6] *See Robertson v. Commonwealth,* 177 S.W.3d 789, 793–94 (Ky. 2005) (Scott, J., concurring in part and dissenting in part) (collecting cases). However, as of January 1, 2011, Kentucky joined these states by adopting RCr 12.04(5), which states: "[i]f an inmate files a notice of appeal in a criminal case, the notice shall be considered filed if its envelope is officially marked as having been deposited in the institution's internal mail system on or before the last day for filing with sufficient First Class postage prepaid."

## B. Retroactive Application of the Prison Mailbox Rule

█ Unfortunately, RCr 12.04(5) was not in effect at the time Jones and Hallum delivered their notices and motions to pris-on officials. Consequently, Jones and Hallum will not receive the benefit of the prison mail box rule unless we retroactively apply RCr 12.04(5).

We recently fashioned the framework delineating the retroactive application of a new rule. In *Leonard v. Commonwealth,* Leonard, after exhausting his direct and collateral appeals, attempted to re-open his RCr 11.42 proceedings following a procedural rule change announced in another decision. 279 S.W.3d 151, 154–55 (Ky. 2009) (discussing the common law procedural rule stated in *Martin v. Commonwealth,* 207 S.W.3d 1 (Ky.2006)). In a case of first impression, we created a standard of retroactivity applicable to new rules "not of constitutional dimension." *Id.* at 160. Notwithstanding our latitude in this uncharted area, we adopted the Supreme Court of the United States' proscription against applying new rules retroactively following final judgment, and further clarified that in collateral attacks, the relevant "judgment" is that which resolves the collateral attack. *Id.* Thus, in the context of an RCr 11.42 proceeding, judgment is final—preventing retroactive application of the new rule—after the order denying the RCr 11.42 motion is appealed and affirmed. *Id.* Consequently, we concluded that Leonard could not avail himself of the new rule announced in *Martin* because his RCr 11.42 collateral attack was denied and affirmed almost seven years *prior* to *Martin. Id.* at 160–61.

When applying the retroactivity framework to the present case, the temporal aspect of the retroactivity determination is clear: Appellants' cases were pending before us when the new prison mailbox rule took effect. Therefore, no final judgment

---

**6.** *Robertson* was set to create a common law version of the inmate mailbox rule, but that measure failed to achieve a majority.

had been entered which disposed of Appellants' collateral attacks. Consequently, under *Leonard,* the new prison mailbox rule can be retroactively applied to Hallum's and Jones' collateral attacks.

We briefly pause to note that we are cognizant that *Leonard* concerned retroactive application of a common law rule, whereas the present case retroactively applies a new rule of criminal procedure. However, this is a distinction without a difference. The discretion to adopt common law rules is entrusted to the judicial branch as part of its function to "say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177 2 L.Ed. 60 (1803). Similarly, the Kentucky Constitution invests us with "the power to prescribe ... rules of practice and procedure for the Court of Justice." Ky. Const. § 116. Therefore, in both contexts it is within the province of this Court to interpret the law—occasionally declaring appropriate common law rules—and to implement procedural rules.

Therefore, based on the foregoing retroactivity analysis, we reverse the Court of Appeals' dismissal of Hallum's and Jones' appeals.[7]

### C. *Robertson's* Equity Provision

 Finally, in light of the recent rule change creating the prison mailbox rule, we must assess the continued viability of the judicially-created equitable tolling test. In *Robertson v. Commonwealth,* a factually parallel case involving dismissal due to the untimely filing of a *pro se* prisoner's motion, a narrow majority of this Court adopted the equitable tolling test—a measure applicable to prisoners who attempt to

get documents timely filed, yet fail. We considered adopting a prison mailbox rule, but declined due to our reluctance to amend rules without following the formal procedures. *Id.* at 791. Instead, we adopted the United States Court of Appeals for the Sixth Circuit's five-factor equitable tolling test. Under this amorphous balancing test, the trial court, before determining whether the deadline is tolled, must consider:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Id.* at 792 (quoting *Dunlap v. United States,* 250 F.3d 1001, 1008–09 (6th Cir. 2001)).

At the outset, we note that the application of the multi-factor equitable tolling test is arduous, "requir[ing] that the trial court engage in a more robust examination of the circumstances." *Id.* at 796 (Roach, J., dissenting). Moreover, "we have a finite number of trial judges and time to handle an ever increasing docket of cases—and by depending on 'equitable tolling' to solve the problem, we have created another hearing with multiple briefs and evidentiary questions prior to the trial court's thoughtful review and ruling." *Id.* at 795 (Scott, J., concurring in part and dissenting in part). Furthermore, the adoption of equitable tolling test was a compromise provision, since there was no prison mailbox provision in place.[8]

---

**7.** Our holding is particularly narrow: retroactive application of RCr 12.04(5) is appropriate because Appellants' sought this *precise* relief, their case was not final when the new rule

was implemented, and the mail box rule is procedural.

**8.** In fact, Justice Roach characterized the majority's application of equitable tolling as "lit-

With the recent enactment of the prison mailbox rule, the burdensome equitable tolling test is now duplicative and superfluous, with its utility marginalized. "Equity is the correction of that wherein the law, by reason of its universality, is deficient." *Houston v. Steele*, 28 S.W. 662, 663 (Ky. 1894). The prison mail box rule was crafted to remedy the procedural deficiency our rules posed to *pro se* inmates seeking to appeal; thus, there is no longer a need for *Robertson*'s equitable tolling provision. Consequently, we overrule *Robertson*.

### III. Conclusion

We reverse the Court of Appeals' decision and remand to the Court of Appeals for further proceedings not inconsistent with this opinion.

All sitting. All concur.

tle more than an adoption of the prison mailbox rule by another name." *Id.* at 796

(Roach, J., dissenting).