Christopher LEE, Appellant

v.

Steve HANEY, Warden; Duncan Kendall, Adjustment Officer; and the Kentucky Department of Corrections, Appellees

NO. 2015–CA–001470–MR

Court of Appeals of Kentucky.

MARCH 24, 2017; 10:00 A.M.

BRIEFS FOR APPELLANT: Christopher Lee, Pro Se, Sandy Hook, Kentucky

BRIEF FOR APPELLEE: Angela T. Dunham, Justice & Public Safety Cabinet, Frankfort, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; ACREE AND D. LAMBERT, JUDGES.

## OPINION

ACREE, JUDGE:

Christopher Lee appeals *pro se* from the Fayette Circuit Court's August 27, 2015 Order dismissing his petition for a declaration of rights. We must decide if the circuit court abused its discretion when it found Lee had failed to exhaust his administrative remedies. We reverse and remand for additional proceedings consistent with this Opinion.

## FACTS AND PROCEDURE

Lee was an inmate at the Blackburn Correctional Complex. While there, Officer Michael Ammons and Sergeant Marcus Christison conducted a standard area search of Lee and another inmate. The officers found a pair of white shoes containing "a small baggie and [four] rolled up pieces of paper containing a green leafy substance" under Lee's bed. Both inmates denied owning the shoes. According to Officer Ammons's written incident report, the "green leafy substance [was] identified by the NARK2 test as SPICE[,[1]]" a substance classified as dangerous contraband by the prison. (R. 19). No test results were made part of the administrative or judicial record. A brief investigation was conducted, during which Officer Ammons and Sergeant Christison both confirmed that the written incident report was true and accurately depicted the incident and their findings.

Prison officials charged Lee with two violations: (1) possession or promoting of dangerous contraband; and (2) smuggling of contraband items into, out of, or within

---

1. "Spice" is a synthetic drug.

the institution. CPP[2] 15.2(II)(C)(VI)(3), (IV)(5). A prison disciplinary hearing was held on April 6, 2015. Lee testified in his defense.[3] He denied ownership of the spice and the shoes, and denied knowing why the shoes were under his bed. The adjustment officer, relying on the incident report and statements by Officer Ammons and Sergeant Christison, found Lee guilty of both charges. Lee forfeited 260 days good-time credit and was sentenced to ninety days of disciplinary segregation, suspended for 180 days.

As a result of the disciplinary action, Lee was transferred from Blackburn to the Little Sandy Correctional Complex, a medium-security facility. There, Lee, with the assistance of an inmate legal aid, prepared his appeal to the Blackburn Warden.[4] Lee dated the appeal April 13, 2015, and at some point placed it in the mail. The Warden's office received Lee's appeal on April 22, 2015. The Warden subsequently notified Lee by letter that his appeal would not be considered because it was not received on or before April 21, 2015, fifteen days from the hearing date as required by CPP 15.6(II)(F)(3).

Lee then filed a petition for declaration of rights in Fayette Circuit Court. He challenged the result of the prison disciplinary hearing, claiming his Fourteenth Amendment due process rights were violated because: (1) there was insufficient evidence to support his conviction because: (a) the test result concerning the spice was unreliable, and (b) the shoes were found in a common area; and (2) the charges were impermissibly "stacked." Lee also stated in his declarations petition he placed his appeal to the Warden in the mail on April 14, 2015, a full week before it was due on April 21, 2015. In support, Lee attached to his petition: (1) an inmate money transfer order presumably for postage dated April 13, 2015; (2) an affidavit from the inmate legal aid averring Lee signed, dated, and put his appeal into an envelope appropriately addressed to the Warden on April 13, 2015, and that it was his understanding Lee mailed the appeal the next day; and (3) his own affidavit averring he prepared and signed the appeal on April 13, 2015 and placed the appeal, with sufficient first-class postage, in the prison mailbox on April 14, 2015.

The circuit court denied Lee's petition, finding Lee had failed to exhaust his administrative remedies as required by KRS[5] 454.415. This appeal followed.

## STANDARD OF REVIEW

Prison disciplinary proceedings are administrative, rather than criminal, in nature. While inmates retain rights under the Due Process Clause of the United States and Kentucky Constitutions, a defendant in a prison disciplinary proceeding is not entitled to "the full panoply of rights due a defendant" in a criminal proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *Smith v. O'Dea*, 939 S.W.2d 353, 357–58 (Ky. App. 1997). In general, the minimal

---

**2.** Kentucky Correctional Policies and Procedures.

**3.** The disciplinary report form concerning his "possession or promoting of dangerous contraband" charge states that "Inmate Lee stated he was satisfied with the statement from his requested witness during the investigation." However, the identity of this person is unclear.

**4.** CPP 15.6(II)(F)(2) requires an appeal "be directed to the Warden of the institution whose Adjustment Committee or Adjustment Officer heard the case."

**5.** Kentucky Revised Statutes.

due process requirements in a prison disciplinary hearing include: (1) advance written notice of the claimed violation; (2) an opportunity to call witnesses and present a defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) a written statement by the fact finder detailing the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563–67, 94 S.Ct. at 2978–80; *Webb v. Sharp*, 223 S.W.3d 113, 117–18 (Ky. 2007). Further speaking generally, these due process requirements are met "if some evidence supports the decision by the prison disciplinary board[.]" *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

## ANALYSIS

Lee's sole argument on appeal is that the circuit court erred when it found he had failed to properly exhaust his administrative remedies. He claims he fully complied with the CPP and, at the very least, his failure to timely file his administrative appeal to the Warden should be excused due to equitable tolling.

KRS 454.415(1) states no civil action shall be brought by an inmate regarding an inmate disciplinary proceeding until all administrative remedies are exhausted. Dismissal of an inmate's civil action, such as a declaration of rights petition, is the appropriate course when an inmate fails to adequately exhaust his or her administrative remedies. KRS 454.415(4).

An inmate who is the subject of a prison disciplinary proceeding may appeal an adjustment officer's adverse decision to the prison warden. CPP 15.6(II)(F)(1). This is an administrative remedy which must be exhausted before a civil action may be filed. Notably, CPP 15.6(II)(F)(3) states, "The inmate has fifteen (15) days after the decision to detail the reasons for the appeal."

The Department of Corrections claims Lee failed to exhaust his administrative remedies because he did not timely file his appeal to the Warden. The Department emphasizes that, because Lee's hearing took place on April 6, 2015, he had until April 21, 2015, to file his administrative appeal. Though Lee's appeal to the Warden is dated April 13, 2015, the Department asserts the Warden's office did not receive it until April 22, 2015, one day after Lee's deadline under CPP 15.6(II)(F)(3). Because Lee's administrative appeal was untimely, so the argument goes, he failed to exhaust his administrative remedies.

In response, Lee argues he complied with the requirements of CPP 15.6(II)(F)(3) when he placed his appeal in the prison mail system on April 14, 2015, more than a week before it was due on April 21, 2015. Lee also requests, as he did before the circuit court, that the doctrine of equitable tolling be applied to qualify his appeal to the Warden.

We agree with Lee that he satisfied CPP 15.6(II)(F)(3). Again, that rule requires an inmate to "detail the reasons for the appeal" within fifteen days after the adjustment officer's decision. Notably, the rule does not state the inmate must *file* or *serve* his appeal within the fifteen day window. It simply requires an inmate to "detail" his appeal within the requisite time period. What, then, does it mean for an inmate to "detail" his reasons for appeal?

"A fundamental canon of statutory [and regulatory] construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Rosen v. Commonwealth, Public Protection Cabi-*

*net, Dept. of Financial Institutions*, 451 S.W.3d 669, 674 (Ky. App. 2014) (citation omitted). The word "detail" is defined and means, in this context, "to state particular facts or information about (something): to describe or discuss the details of (something)." Merriam–Webster's Collegiate Dictionary (11th ed. 2005), *available at* http://www.merriam-webster.com/dictionary/detail. Applying this ordinary definition of "detail," an inmate, arguably, need only write out or state his reasons for appeal to comply with CPP 15.6(II)(F)(3).

■ "The [Department of Corrections], as an administrative agency, is tasked with interpreting statutes and regulations that it is charged with implementing." *Pate v. Department of Corrections*, 466 S.W.3d 480, 484 (Ky. 2015). There is little authority published by the DOC interpreting this rule. Without specifically referencing CPP 15.6(II)(F)(3), we note that the disciplinary forms created by the DOC contain the following, "[the inmate has] 15 days from [the adjustment officer's decision] to appeal the committee's decision by submitting [a] written statement to the Warden." (R. 30). We derive from this that the DOC's interpretation of CPP 15.6(II)(F)(3) is that an inmate "submit" his appeal within fifteen days. The common definition of submit means "to give (a document, proposal, piece of writing, etc.) to someone so that it can be considered or approved." Merriam–Webster's Collegiate Dictionary (11th ed. 2005), *available at* http://www.merriam-webster.com/dictionary/submit.

Considering the plain language of CPP 15.6(II)(F)(3) and the DOC's interpretation of that regulation, we see nothing that requires that the Warden *receive* an administrative appeal within fifteen days. Even the DOC's own interpretation of its rule merely requires that the inmate submit his appeal to the warden within the fifteen-day window.

In this case, the only evidence in the record indicates Lee wrote (detailed) his reasons for appeal on April 13, 2015, and then mailed (submitted) his appeal to the Warden on April 14, 2015. Lee offered his own affidavit, an affidavit from his legal aide, and an inmate money transfer authorization form to support his claim. The DOC did not counter this evidence. Based on the record, we are convinced Lee fully complied with CPP 15.6(II)(F)(3) and the Warden erroneously declined to consider his appeal.

There is another reason to return this case to the circuit court and, from there, if needed, to the administrative level. Lee argues, if this Court should find he violated the letter of CPP 15.6(II)(F)(3), he certainly complied with the spirit of the rule and his administrative appeal should be saved by equitable tolling. To support his position, Lee relies on this Court's unpublished opinion of *Holt v. Cooper*, No. 2006-CA-000765-MR, 2007 WL 491605 (Ky. App. 2007).[6] In *Holt*, a panel of this Court, citing *Robertson v. Commonwealth*, 177 S.W.3d 789 (Ky. 2005) *overruled by Hallum v. Commonwealth*, 347 S.W.3d 55 (Ky. 2011), found that equitable tolling applied to prison disciplinary actions.[7] *Holt*, 2007 WL 491605, at *2.

---

6. Kentucky Rule of Civil procedure (CR) 76.28(4)(c) states: "Opinions that are not to be published shall not be cited or used as binding precedent in any other case in any court of this state; however, unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court." Citation to *Holt* is appropriate under these circumstances.

7. Notably, *Robertson* was still good law at the time this Court applied its strictures in *Holt*.

█ The doctrine of equitable tolling is "a measure applicable to prisoners who attempt to get documents timely filed, yet fail." *Hallum*, 347 S.W.3d at 58. Under the doctrine, the critical inquiry is "whether the circumstances preventing a petitioner from making a timely filing were both beyond the petitioner's control and unavoidable despite due diligence." *Commonwealth v. Carneal*, 274 S.W.3d 420, 429 (Ky. 2008) (citations omitted). To understand the current state of our jurisprudence, we must analyze our equitable tolling precedent from the beginning, starting with *Robertson*.

The Kentucky Supreme Court first adopted the equitable tolling doctrine in *Robertson* to alleviate the procedural obstacles our rules posed to *pro se* inmates endeavoring to appeal. 177 S.W.3d at 791. Notably, the Supreme Court applied the doctrine to cases in which an inmate attempts to timely file a *criminal* post-conviction motion, but fails through no fault of his own. *Id.* at 792.

Six years later, the Supreme Court overruled *Robertson* in *Hallum, supra*. The Supreme Court concluded in *Hallum* that the creation of RCr[8] 12.04(5),[9] which codified a doctrine commonly known as the "prison mailbox rule," rendered the equitable tolling test needless. *Hallum*, 347 S.W.3d at 59 ("With the recent enactment of the prison mailbox rule, the burdensome equitable tolling test is now duplicative and superfluous ...; thus, there is no longer a need for *Robertson*'s equitable tolling provision.").

█ At first blush, it would appear RCr 12.04(5)'s prison mailbox rule would be readily applicable to the case before us. By all accounts, Lee placed his administrative appeal in the prison mailbox system before April 21, 2015. But RCr 12.04(5) has limited application. Most significantly, the prison mailbox rule and RCr 12.04(5) only apply to criminal matters and will not operate to save an inmate's civil petition for declaration of rights. *Anglin v. Justice & Pub. Safety Cabinet*, 480 S.W.3d 291, 293 (Ky. App. 2015); *Willis v. Willis,.* 361 S.W.3d 341, 343–44 (Ky. App. 2012) ("The Kentucky Supreme Court did not adopt a corresponding civil rule for applying the prison mailbox rule to the filing of documents by inmates involved in civil cases.").

Before proceeding further, we pause to emphasize the procedural peculiarity of this case. Lee is not seeking to invoke RCr 12.04(5) or the equitable tolling doctrine to save his *judicial* declaration of rights petition. The focus is, instead, on his *administrative* appeal to the Warden. We agree that the procedural posture of this case—notably the "saving" of an administrative appeal—causes RCr 12.04(5) to be even less applicable. That rule expressly applies to an appeal "taken by filing a notice of appeal in the trial court." RCr 12.04(1).

That leaves equitable tolling as the only viable option presented that may save Lee's appeal to the Warden. The continuing viability of the equitable tolling doctrine post-*Hallum* is in a state of flux. However, several panels of this Court have held the doctrine still applies to post-conviction motions "that do not involve the prison mailbox rule" and "that meet strict standards of tolling relief." *Treat v. Commonwealth*, No. 2010-CA-002220-MR, 2012 WL 1886512, at *2 (Ky. App. May 25, 2012); *McAlister v. Commonwealth*, No.

8. Kentucky Rules of Criminal Procedure.

9. RCr 12.04(5) provides, "[i]f an inmate files a notice of appeal in a criminal case, the notice shall be considered filed if its envelope is officially marked as having been deposited in the institution's internal mail system on or before the last day for filing with sufficient First Class postage prepaid."

2014-CA-001267-MR, 2016 WL 1068998, at *3 (Ky. App. 2016); *Anderson v. Commonwealth*, 2012–CA–001869–MR, 2014 WL 812886, at *5 (Ky. App. Feb. 28, 2014). While the equitable tolling doctrine has been superseded by RCr 12.04(5) in some instances, that rule, as explained previously, is not all encompassing and is of limited applicability. Equitable tolling has value and purpose. The adoption of RCr 12.04(5) and the mailbox rule did not eradicate the need for equitable tolling in some instances.

What remains is whether we should apply equitable tolling to an administrative appeal. As pointed out by Lee, there is precedent for this course of action. In *Holt, supra*, the inmate claimed he mailed his administrative appeal to the warden before the fifteen-day period expired, yet the warden did not receive it and dismissed the appeal as untimely. 2007 WL 491605, at *1. In support, the inmate submitted an affidavit from an inmate legal aid who stated that he timely filed the inmate's appeal on September 1, 2005, and copies of the prison's "Legal Mail Log Record" showing that the inmate's correspondence to the warden was placed in the prison mail on September 1, 2005. *Id.* This Court, after analyzing the equitable tolling doctrine, found no reason why the doctrine should not apply equally to prison disciplinary actions and, upon applying its strictures, found the inmate had adequately substantiated his claim of filing a timely appeal to the warden. This Court emphasized that, under the doctrine of equitable tolling, "if the *pro se* petitioner has otherwise complied with all of the requisites for filing a petition, the deadline for such filing is tolled on the date the prisoner delivers the correctly addressed petition to the proper prison authorities for mailing." *Id.* at *2.

In the case before us, as in *Holt*, Lee prepared his appeal on April 13, 2015, well in advance of the fifteen-day deadline. He then allegedly placed his appeal in the prison mail system on April 14, 2015. Like the inmate in *Holt*, Lee submitted documentary evidence, including two affidavits and a prison money order, to substantiate his position; the DOC failed to counter Lee's evidence. Lee diligently pursued his appeal and did everything on his part to ensure his appeal was timely submitted to the Warden. We fail to see what else Lee could have done.

■ We are mindful, however, that "the appropriate forum for finding facts militating for or against equitable tolling is the circuit court; and the [Fayette] Circuit Court has never held an evidentiary hearing on the issue of whether [Lee] actually delivered a properly prepared and addressed [administrative appeal] to the appropriate ... prison authorities for mailing prior to the expiration of the limitation period." *Robertson*, 177 S.W.3d at 792. We reverse the circuit court's decision and remand for an evidentiary hearing to determine whether Lee can establish his right to relief under equitable tolling. If the circuit court should find equitable tolling applicable, we direct the circuit court to order the Warden to fully consider Lee's administrative appeal. Nothing in this Opinion should be construed as directing the outcome of the circuit court's evidentiary hearing or the Warden's review, should such review be required.

### CONCLUSION

In sum, we hold that the circuit court erred when it dismissed Lee's petition for declaration of rights on the ground he failed to exhaust his administrative remedies without first considering the doctrine of equitable tolling. We reverse the Fayette Circuit Court's August 27, 2015 Order

and remand for additional proceedings consistent with this Opinion.

ALL CONCUR.

