RENDERED:  APRIL 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0955-MR

JAMES HARRISON                                                    APPELLANT

APPEAL FROM OHIO CIRCUIT COURT
v.          HONORABLE TIMOTHY R. COLEMAN, JUDGE
ACTION NO. 18-CI-00381

JASON GIBSON, ANDREW BENTON,
KEVIN DENNIS, ERIC NANTELL,
GERALD HELTON, CARL DAVIS,
KATHY LITTERAL AND UNKNOWN
DEFENDANTS                                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, KRAMER, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  James Harrison, a *pro se* inmate, appeals from orders

of the Ohio Circuit Court dismissing his case for lack of exhaustion of remedies

and failure to state a claim on which relief may be granted.

On Friday, January 26, 2018, correctional staff employed at Eastern Kentucky Correctional Complex (EKCC) transported nine inmates, including Harrison, because they were being transferred to other prison facilities. Harrison and the other inmates traveled in a van (the prisoner van) being driven by Correctional Officer Andrew Benton with Correctional Sergeant Eric Nantell in the front passenger seat. The van was being followed by a second van (the property van) containing the inmates' personal belongings, which was driven by Correctional Officer Jason Gibson with Correctional Lieutenant Kevin Dennis in the passenger seat. While exiting the Western Kentucky Parkway for Beaver Dam in Ohio County, the property van rear-ended the prisoner van.

Harrison filed two health care grievances in the days immediately following the accident listing multiple complaints about his medical treatment. Some of his complaints were related to the accident and some were not. Both health care grievances were resolved informally, and Harrison did not appeal.

On February 2, 2018, Harrison was notified that he was placed on grievance restriction, which meant he was prohibited from filing more than one grievance every ten days.

On November 8, 2018, Harrison filed a complaint in circuit court against Benton, Nantell, Gibson, Dennis, Correctional Lieutenant Carl Davis, Correctional Lieutenant Gerald Helton, EKCC Warden Kathy Litteral, and

unknown defendants who were insurance providers for the Kentucky Department of Corrections (DOC). Harrison alleged that because the prisoner van only had enough seatbelts for seven inmates, none of the inmates was provided with seatbelts. He alleged he and the other inmates were injured in the crash, but no one reported the accident and, despite the inmates' complaining about their injuries, they were denied medical treatment until they reached their new facilities and went through the intake process.

Harrison argued he was unable to exhaust his administrative remedies based upon the actions of the defendants. Later, he explained about the grievance restriction.

Harrison sought damages and listed various causes of action against the defendants generally, including claims regarding the failure provide a seatbelt for him, negligence for the motor vehicle accident, failure to report the accident, failure to seek immediate treatment for his injuries, inadequate supervision, and a conspiracy to cover up the true extent of the accident. Harrison argued he sustained bodily injury and continues to suffer physical and mental pain. He argued he was entitled to recover for his past and future medical expenses, receive an independent evaluation and treatment, and receive other damages.

Harrison attached the grievance restriction memorandum, a health care grievance he submitted for medical treatment after the motor vehicle accident,

an incident report summary, occurrence reports filed by Benton, Nantell, Gibson, Dennis, and Davis, and photos they took of the two vans. All reports by DOC employees indicated the vans sustained no damage, the "bump" was minor and all the inmates reported they were fine; the photos showed no damage to the vans.

In 2019, the defendants filed motions to dismiss. Benton, Nantell, Dennis, Davis, Helton, and Litteral argued that Harrison failed to exhaust his administrative remedies as required by Kentucky Revised Statutes (KRS) 454.415 and failed to state a claim upon which relief may be granted relative to these defendants because only Gibson was responsible for the accident and he was the only person with a duty to report the accident. They attached an affidavit by Roger Mitchell to establish that the health care grievances had not been appealed. Gibson and the unknown defendants filed an amended motion to dismiss based on Harrison's failure to exhaust his administrative remedies.

Harrison responded to both motions and indicated he had valid claims against these defendants. In support of his claims, he attached an affidavit from James Mattingly, another inmate, who claimed to have been transported with Harrison when the accident occurred and provided an account consistent with Harrison's about how the inmates were injured and the guards' failure to respond appropriately.

As to failure to exhaust his administrative remedies, Harrison argued he should not be penalized for failing to file a grievance when placed on grievance restriction which prohibited him from exhausting all necessary grievances. He also asserted he was satisfied with the informal resolution of his health care grievances at the time.

The circuit court summarily granted the motions to dismiss. Harrison filed motions to reconsider; these were denied.

We agree that the circuit court was obligated to dismiss Harrison's action where he failed to exhaust his administrative remedies before filing suit and affirm on that basis.

KRS 454.415 provides in relevant part:

(1) No action shall be brought by or on behalf of an inmate, with respect to:

. . .

(d) A conditions-of-confinement issue;

until administrative remedies as set forth in the policies and procedures of the Department of Corrections, county jail, or other local or regional correctional facility are exhausted.

(2) Administrative remedies shall be exhausted even if the remedy the inmate seeks is unavailable.

(3) The inmate shall attach to any complaint filed documents verifying that administrative remedies have been exhausted.

(4) A court shall dismiss a civil action brought by an inmate for any of the reasons set out in subsection (1) of this section if the inmate has not exhausted administrative remedies[.]

KRS 454.415(4) requires dismissal if the inmate has not proven exhaustion of administrative remedies. *Thrasher v. Commonwealth*, 386 S.W.3d 132, 134 (Ky.App. 2012). "[E]xhaustion of administrative remedies is a jurisdictional prerequisite to seeking judicial relief." *Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 625 (Ky. 2001).

"Duly promulgated administrative regulations have the 'force and effect of law.'" *Woods v. Commonwealth*, 599 S.W.3d 894, 897 (Ky.App. 2020) (quoting *Linkous v. Darch*, 323 S.W.2d 850, 852 (Ky. 1959)). 501 Kentucky Administrative Regulations (KAR) 6:020 § 1(1) incorporates the Department of Corrections Policies and Procedures (CPP) by reference, *Woods*, 599 S.W.3d at 897, including CPP 14.5, Claims Commission, and CPP 14.6, Inmate Grievance Procedure.

CPP 14.6(II)(B) provides in relevant part: "A grievable issue shall include any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue." It then lists six items as examples of what a grievable issue may include, including "[p]ersonal action by staff" and "[h]ealth care concern."

CPP 14.6(II)(C) provides a list of non-grievable issues none of which is applicable here.

Because each issue Harrison raised in his complaint could come under a personal action by staff, was a health concern, or is not specifically identified as a non-grievable issue, each issue was required to be grieved through the entire administrative process prior to Harrison's filing his complaint and then Harrison was required to attach proof of these steps to his complaint.

The process to exhaust administrative remedies through a grievance is set out in CPP 14.6(II)(J). The inmate must file the grievance within five business days after the incident occurred. CPP 14.6(II)(J)(1)(a)(2). First the matter is resolved informally, then if the inmate decides to seek further review it progresses to a grievance committee hearing, an appeal to the warden, and then an appeal to the commissioner. CPP 14.6(II)(J)(1)-(4). The process for a health care grievance is addressed in CPP 14.6(II)(K)(1)-(3) and concludes with a final administrative review by the medical director.

On appeal, Harrison's defense for failure to exhaust his administrative remedies through grievances is that he was prohibited from filing any further grievances before the five-day window for him to file grievances had expired, and that his issues are not the sort that the grievance process can address.

Because the accident occurred on Friday, January 26, 2018, Harrison had until the following Friday, February 2, 2018, to file any needed grievances. The grievance restriction memorandum was dated February 2, 2018, but we do not know if Harrison received it that day.

CPP 14.6(II)(E)(3) provides in relevant part:

> If the warden determines that an inmate or group of inmates has abused the grievance procedure by filing numerous frivolous or harassing grievances, the Warden may limit the number of grievances which may be filed by that inmate or group of inmates. An inmate or group of inmates, whose grievances have been limited, shall be allowed to file no more than one (1) grievance every ten (10) business days.

Harrison clearly failed to exhaust the health care grievance process following the motor vehicle accident because he did not pursue any additional administrative process after an informal resolution was reached. If Harrison was dissatisfied with his treatment later, he was required to file a new grievance. If Harrison wanted an independent evaluation and treatment of his injuries after the accident, he needed to raise this request in the original grievance and appeal any denial of that request.

The question as to whether a grievance restriction can excuse the filing of grievances required to exhaust administrative remedies appears to be a novel one. However, upon careful examination of this issue, we believe that Harrison has not adequately pled or established such a defense.

As we read the grievance restriction memorandum, it was a prospective limitation which tracks the language of CPP 14.6, meaning that Harrison could still file a grievance when he received it, and was only limited from filing a second grievance within the following ten days. The memorandum stated whom Harrison needed to contact if he had any questions about this restriction. However, even if the memorandum could be interpreted as preventing Harrison from filing another grievance until ten days after his previous medical grievance, he still failed to establish exhaustion.

Harrison has not pled that he would have raised these issues in a grievance had he not received the restriction memorandum. Additionally, Harrison made no attempt to file a grievance that raised the issues which he is now seeking to litigate in court.

To establish sufficient exhaustion under KRS 454.415, Harrison needed to do more. The statute at minimum would require that he attempt to grieve each cause of action and force prison officials to reject his grievance due to the grievance restriction imposed upon him, and then attach such proof to his complaint.

Harrison has failed to demonstrate that he did all he could to file such a grievance and that the failure to have his grievance reviewed was beyond his control and unavoidable despite his due diligence. *Compare with Lee v. Haney*,

517 S.W.3d 500, 504-07 (Ky.App. 2017) (remanding for the circuit order to consider whether equitable tolling should apply to excuse an inmate's failure to exhaust his administrative remedies where the inmate prepared his grievance appeal well in advance of the deadline, placed it in the prison mail system, and provided proof of his actions).

It is no excuse that the issues could not be resolved through a grievance. KRS 454.415(2). Harrison was required to exhaust his administrative remedies before filing his complaint.

Additionally, as to Harrison's negligence claim, there was a further avenue for exhaustion. We address it despite the parties' failure to raise it, as it provides an additional reason why affirmance for failure to exhaust is appropriate. CPP 14.5(II)(A)(1) provides:

> If an individual believes that he has suffered a loss or injury to his person or property as a result of negligence on the part of Corrections or its employee or agent, he may file a claim with the Claims Commission. All claims shall be processed through the Claims Commission if payment is required. A claim shall not be brought before the Commission unless the value of the total amount of damages claimed therein meets the limits set forth in KRS 49.180 [$250 or greater].

As Harrison was requesting damages due to negligence and the bodily harm he incurred because of the motor vehicle accident, Harrison was also required

to proceed administratively by filing a claim with the Claims Commission,[1] pursuant to KRS 49.020. The Claims Commission has exclusive jurisdiction over these types of claims. KRS 49.040(1). Then Harrison would need to proceed to exhaust that avenue of review. *See Harris v. Zirklebach*, No. 2019-CA-001293-MR, 2021 WL 298786, *2 (Ky.App. Jan. 29, 2021) (unpublished) (requiring an inmate to show that his negligence claim for a finger injury due to a defective prison door was administratively exhausted both through attachment of documentation of the grievance process and the Claims Commission process); *Tramber v. Commonwealth*, No. 2017-CA-000437-MR, 2018 WL 1565676, *2 (Ky.App. Mar. 30, 2018) (unpublished) (discussing an inmate's process in proceeding with a grievance and action before the Claims Commission in seeking compensation for the loss of two purportedly valuable books).[2]

The Claims Commission has different processes for addressing claims depending upon the value of the claim above that jurisdictional minimum. KRS 49.090(2), (3). Had Harrison done so and been dissatisfied with the Claims Commission's final decision, he would then be authorized to file a proceeding in

---

[1] *But see* 802 KAR 2:010E (Executive Order 2020-708 relating to negligence claims which purports to abolish the Claims Commission, replace it with a new Board of Claims, and provides specific mechanisms for how such claims are heard).

[2] Pursuant to the Kentucky Rules of Civil Procedure 76.28(4)(c), we may consider these unpublished appellate decisions because there are no published opinions which adequately address the issue of whether negligence issues against the DOC and its employees also requires exhaustion through the Claims Commission process.

circuit court if his claim was for $2,500 or more, KRS 49.150(2), and then appeal to this Court, KRS 49.160.

Accordingly, we affirm the Ohio Circuit Court's orders dismissing Harrison's complaint on the basis that he failed to establish exhaustion of his administrative remedies.

COMBS, JUDGE, CONCURS.

KRAMER, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

James Harrison, *pro se*
Eddyville, Kentucky

BRIEF FOR APPELLEES ANDREW BENTON, KEVIN DENNIS, ERIC NANTELL, GERALD HELTON, CARL DAVIS, KATHY LITTERAL:

Kristin Wehking
Frankfort, Kentucky

BRIEF FOR APPELLEES JASON GIBSON AND UNKNOWN DEFENDANTS:

Aida Almasalkhi
Prospect, Kentucky